**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

SECURITIES AND EXCHANGE COMMISSION,

      **Plaintiff,**

v.

**EB5 ASSET MANAGER, LLC,**
**and LIN ZHONG A/K/A LILY ZHONG,**

      **Defendants, and**

**U.S. EB-5 INVESTMENTS LLC,**
**OAKLAND OFFICE HOLDINGS LLC,**
**B.X WOK CONSTRUCTION LLC,**
**US INVESTMENT LLC d/b/a US INVESTMENT FL LLC,**
**TOP SUN ENERGY LLC,**
**OCEAN BLVD. FAMILY LIMITED PARTNERSHIP, LTD.,**
**B.X PROPERTY MANAGEMENT LLC,**
**US1 REAL ESTATE DEVELOPMENTS, LLC, and**
**INVESTOR ASSET PROTECTION, LLC,**

      **Relief Defendants.**

_____/

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges:

**I.**    **INTRODUCTION**

1.    Since at least March 2011, Defendants Lin Zhong, a/k/a Lily Zhong and EB5 Asset Manager, LLC ("Asset Manager") have exploited a federal visa program to defraud investors seeking investment returns and a path to United States residency. To date, Defendants have fraudulently raised at least $8.5 million through their sales of securities investments in Relief Defendant U.S. EB-5 Investments LLC ("EB-5 Investments") to at least 17 investors.

2.      Defendants solicited the investments predominantly from Chinese citizens seeking United States residency, claiming the investments would qualify under the EB-5 Program administered by United States Citizenship and Immigration Services ("USCIS"). Under the EB-5 Program, foreign nationals may obtain United States residency by making qualified investments of $500,000 or more in a project that creates or preserves at least 10 jobs for United States workers.

3.      To convince investors to invest, Defendants represented, among other things:

- 100% of their funds would be used in construction projects;
- Any transactions that benefitted Defendants would require investors' consent;
- Investors' funds would be held in escrow until their Form I-526 immigrant petitions were approved;
- Investors would receive unaudited financial statements;
- Annual meetings would be held, during which investors would be allowed to participate in management decisions, in order to satisfy the USCIS requirement that investors play more than a merely passive role; and
- Zhong had an extensive history developing real estate projects.

4.      These representations were all false or materially misleading. Instead of construction projects, substantial funds were used for things such as a $2.5 million home for Zhong to reside in on a part-time basis, luxury automobiles, a 48-foot boat, and monies for Zhong's daughter's education. Defendants ignored the requirement that investors consent to transactions benefitting Zhong or affiliated entities, and EB-5 Investments engaged in transactions such as buying out Zhong's interest in an another business and partially funding the purchase of real estate by an entity in which Zhong had an interest. The promise that investors' funds would be escrowed pending approval of their I-526 petitions was meaningless, with approximately $6.5 million moved out of escrow prior to approval. To make matters worse, Zhong used $5 million of this money to collateralize a loan for the purchase of a home for her.

personal benefit.  In addition, financial statements which would have disclosed to investors these unlawful diversions were never produced and no investor meetings were held.  Finally, the story Zhong told investors about her business background concealed her personal and business bankruptcies.

5.      By engaging in this conduct, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a); and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.

6.      On August 26, 2015, at a time they were aware of the Commission's investigation in this matter, Defendants assigned a security interest in some EB-5 Investments' assets to a newly formed entity, Relief Defendant Investor Asset Protection, LLC ("Investor Asset"). Zhong has selected EB-5 Investments' accountant as the sole member of that entity, while Zhong maintains exclusive control over Defendants' and Relief Defendants' bank accounts.

7.      On September 14, 2015, Defendants notified investors that EB-5 Investments is no longer working on investors' pending visa petitions and investors "will likely be unsuccessful" in obtaining an EB-5 visa.  Under the terms of EB-5 Investments' subscription agreement, non-approval of the investor's I-526 application entitles the investor to a return of his or her investment.

8.      Unless the assets of Defendants' and Relief Defendants are frozen and a receiver is appointed over Asset Manager and the Relief Defendants, Zhong will retain ultimate responsibility for ensuring the return of investors' funds, a role she has shown herself utterly unfit to fulfill.

## II. DEFENDANTS, RELIEF DEFENDANTS, AND RELATED ENTITY AND INDIVIDUAL

### A. Defendants

9. Asset Manager is a Florida limited liability company located in Oakland Park, Florida. Zhong formed Asset Manager in 2010 and is its managing member. Asset Manager is the managing member of EB-5 Investments.

10. Zhong is a citizen of New Zealand. During the relevant time period, Zhong resided part-time in the United States, splitting her time between Boca Raton and Highland Beach, Florida. She controls the entities described in paragraphs 9 and 11 through 18 of this Complaint, and is the sole signatory on their bank accounts.

### B. Relief Defendants

11. EB-5 Investments is a Florida limited liability company located in Oakland Park, Florida. Zhong formed EB-5 Investments in 2010 and controls it through her control of its managing member, Asset Manager.

12. Oakland Office Holdings LLC ("Oakland Holdings") is a Florida limited liability company located in Oakland Park, Florida. Zhong has been Oakland Holdings' manager since its formation.

13. B.X Wok Construction LLC ("B.X Wok") is a Florida limited liability company located in Oakland Park, Florida. Zhong formed B.X Wok in 2011, and it has been a wholly-owned subsidiary of EB-5 Investments since no later than March 1, 2011.

14. US Investment LLC ("USI") is a Delaware limited liability company located in Oakland Park, Florida. Zhong has been USI's managing member since its formation in 2008. From 2008 until present, Zhong has owned 1 percent of USI. From June 2012 to the present, EB-5 Investments has owned the other 99%.

15.     Top Sun Energy LLC ("Top Sun"), is an inactive Florida limited liability company located in Oakland Park, Florida.  Zhong formed Top Sun in December 2011 as a start-up solar energy business.  Zhong was a manager of Top Sun until at least May 1, 2013

16.     Ocean BLVD. Family Partnership, Ltd. ("Ocean LP") is an inactive limited partnership located in Oakland Park, Florida.  The general partner of Ocean BLVD is Ocean BLVD. Property Management, LLC ("Ocean LLC"), an inactive Florida limited liability company formed in 2012 for which Zhong is the managing member.

17.     B.X Property Management LLC ("B.X Property") is a Florida limited liability company located in Oakland Park, Florida.  Zhong formed B.X Property in 2011 and is its managing member.

18.     US1 Real Estate Developments, LLC ("US1 Real Estate") is a Florida limited liability company located in Oakland Park, Florida.  Zhong formed US1 Real Estate and is its manager.  US1 Real Estate is a wholly-owned subsidiary of EB-5 Investments.  USI Real Estate owns the property associated with the City Center project, a mixed-use commercial project EB-5 Investments claims it will develop in Port St. Lucie, Florida.  On August 21, 2013, Zhong caused USI to acquire the City Center project by transferring funds from EB-5 Investments to the closing agent.  In January 2015, USI quitclaimed the City Center land to US1 Real Estate.

19.     Investor Asset is a Delaware limited liability company Zhong's counsel formed on or about August 25, 2015.  The sole member of Investor Asset is an accountant for EB-5 Investments.

## C.     Related Individual

20.     An individual identified herein as "Attorney" is a Florida resident licensed to practice law in Florida and New Jersey, whose primary practice area is immigration law.  Attorney is also a Florida licensed real estate broker.  Attorney was the attorney of record

associated with all investor immigration petitions to the USCIS and performed legal work for Zhong and Zhong-controlled companies.  Since 2013, Attorney has owned three EB-5 Regional Centers with USI.

## III.   JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b) and 77v(a); and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.

22.     This Court has personal jurisdiction over Defendant and Relief Defendants, and venue is proper in the Southern District of Florida, because:  (a) many of Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the Southern District of Florida; (b) Zhong, who controlled Defendants and Relief Defendants, is an inhabitant of and may be found in the Southern District of Florida when she is in the United States, and she transacts business in the Southern District of Florida; and (c) the Corporate Defendants and Relief Defendants are all located in Oakland Park, Florida, which is in the Southern District of Florida.

23.     In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV.   FACTUAL BACKGROUND

24.     EB-5 Investments was purportedly in the business of providing funds to support the development of residential and commercial property meeting the requirements of the EB-5 Program, under which a foreign national can receive conditional and then permanent residency status by investing $500,000 in a "Targeted Employment Area" ("TEA") that creates at least ten full-time jobs for United States workers.

25.     Defendants solicited investments in minority membership interests in EB-5 Investments for $500,000, plus an administrative fee typically ranging from $55,000 to $76,500 per investor.   Beginning in or about March 2011 until at least August 2014, Defendants raised approximately $8.5 million from 17 individuals as investments in EB-5-Investments and an additional $1.2 million in administrative fees.

26.     Investors' investments in EB-5 Investments were finalized in the United States, and some investors were personally solicited in the United States to invest.  The investment funds were received at Bank of America in the United States.  In exchange, investors received membership interests in EB-5 Investments, an entity formed in and with its principal place of business in the United States.  EB-5 Investments' assets consisted of funds located in United States bank accounts and membership interests in other United States domiciled entities whose assets were located in the United States.

27.     EB-5 Investments' offering materials identify the membership interests as securities.  In addition, each investment in EB-5 Investments involved an investment of money in a common enterprise (EB-5 Investments) with profits to come from the efforts of others (Asset Manager, EB-5 Investments' managing member, acting through Zhong).   The membership interests are therefore securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), and Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78a(10).

A.     **The Offering Materials**

28.     Defendants solicited investors through offering materials, including an EB-5 Investments Private Placement Memorandum ("PPM"), EB-5 Investments' operating agreement, a subscription agreement, and, in some instances, an escrow agreement ("Offering Materials"). Investors, through Attorney, submitted the Offering Materials and a business plan to USCIS in support of investors' EB-5 visa petitions.

29.     Zhong and Asset Manager had ultimate authority over the statements contained in EB-5 Investments' Offering Materials by virtue of their control over EB-5 Investments.

### 1.     PPMs

30.     EB-5 Investments distributed to investors at least four versions of the PPM. Zhong participated in the creation and drafting of each PPM and approved each for distribution to investors.

#### a.     First and Second PPM

31.     Defendants utilized the first PPM, dated March 1, 2011 ("First PPM"), during 2011, 2012, and 2013.

32.     Defendants utilized a second PPM (different copies of which had minor differences in the amount of the administrative fee), also dated March 1, 2011 ("Second PPM"), during 2012 and 2013.

33.     The First and Second PPMs are substantially similar, and both represent that an investor's funds would be held in an escrow account until USCIS approved the investor's EB-5 visa petition.

34.     In the First and Second PPMs, EB-5 Investments represented it was "a holding company using investors' funds to provide financing in the form of equity capital to [Relief Defendant] B.X Wok . . . for use in developing real estate construction projects . . . .", either owned by B.X Wok . . . or on another entity's behalf." The First and Second PPMs also stated that "100% of the proceeds of [the] offering [would] be provided as equity capital to B.X Wok . . . for use in its development projects." These PPMs also stated that administrative fees would be provided to Asset Manager "for use in paying set up costs, operating costs, and other administrative fees associated with [the] offering."

### b.   Third PPM

35.    The Defendants distributed the third PPM, also dated March 1, 2011 ("Third PPM"), during 2013 and 2014.  The Third PPM stated EB-5 Investments would use "investors' funds to do projects in the form of equity capital to various companies, whether in existence or to be formed in the future, for use in various projects associated with the developing of the City Center Project," a mixed-used commercial real estate project in Port St. Lucie, Florida.  The Third PPM also stated that "100% of the proceeds of [the] offering [would] be provided as equity capital to various companies for use in projects, or to such other entities as the Manager may, [in] its sole and unfettered discretion, designate."  The Third PPM also stated that Asset Manager would use administrative fees for set up costs, operating costs, and other administrative fees associated with the offering.

### c.   Fourth and Fifth PPMs

36.    A fourth and fifth PPM are dated June 1, 2013 ("Fourth PPM" and "Fifth PPM"). Defendants sent the Fourth and Fifth PPMs to investors, who executed Acknowledgements of Acceptance.  The Fourth PPM promises the same use of investor funds as the Third PPM and states EB-5 Investments will develop a residential project in Brevard County, Florida.  The Fifth PPM is identical to the Third PPM, with the exception of the date.

### 2.   Operating Agreement

37.    Defendants attached to each PPM an operating agreement, the majority of which were executed by Zhong on behalf of Asset Manager, which states:

> [EB-5 Investments] may enter into arrangements, contracts, or agreements which benefit the members, their family, or affiliates with the consent of the other members provided that the consent of the other members shall not be unreasonably withheld if there has been full disclosure by said members as to the benefits to be received by him or his family or affiliates, and the arrangement, contract, or agreement is no less favorable than similar arrangements, contracts, or agreements that are available to the company on an arm's length basis.

### 3.      Subscription Agreement

38.      Defendants distributed to investors a subscription agreement, the majority of which were signed by Zhong on behalf of Asset Manager and EB-5 Investments, which states investors' "funds shall be used only for purposes set forth in the [PPM] . . . ."

### 4.      Escrow Agreement

39.      Defendants also distributed an escrow agreement to the majority of investors, reviewed, approved, and in the majority of cases signed by Zhong, which assured investors their contributions would remain in an escrow account until USCIS approved their EB-5 visa petitions.

### 5.      Business Plan

40.      EB-5 Investments had a business plan, approved by Zhong, which investors submitted through Attorney to USCIS with their EB-5 visa petitions.  The business plan makes representations regarding Zhong's history in real estate development.

### B.      Zhong's Distribution of the Offering Materials

41.      Zhong distributed the Offering Materials to investors.

42.      Zhong also made representations to prospective investors (all of whom invested $500,000) during in-person solicitations, including the following:

a.      In the first half of 2011, Zhong met in Shanghai, China with "Investor 1," telling Investor 1 she could obtain a green card by investing in EB-5 Investments, which would use her funds to develop a house in Palm Bay, Florida.  Zhong provided Investor 1 with the Offering Materials, including the First PPM, subscription agreement, and operating agreement. In July 2011, Investor 1 executed the investment documentation at a meeting with Zhong in Shanghai.

b.      In September 2012, Zhong met in Florida with "Investor 2," telling Investor 2 that EB-5 Investments was a real estate project, that Zhong would build and sell homes, and that Investor 2 would receive a return on his investment from the proceeds of the home sales.  Zhong represented that the minimum investment was $500,000, plus a fee of $55,000.  Zhong provided Investor 2 the First PPM, together with the operating agreement and subscription agreement.  Investor 2 met with Zhong in Florida a second time, where they executed the documentation.  In 2013, after USCIS denied Investor 2's EB-5 visa petition, Zhong sent him the Third PPM.

c.      In approximately 2011, Zhong met in Orlando, Florida with "Investor 3," telling Investor 3 that Zhong would use his $500,000 investment to develop homes in Florida, and he would receive a Green Card and a home as a return on his investment.  Zhong told Investor 3 all he needed to do was provide information for the EB-5 visa petition, funds for the investment, and documentation of the funds' source.

d.      In Summer 2013, Zhong met in Beijing, China with "Investor 4," a prospective investor.  Zhong told Investor 4 EB-5 Investments would invest in real estate and the minimum investment was $500,000.  In July 2013, Zhong again met in Beijing with Investor 4, telling him that EB-5 Investments would use Investor 4's investment funds to build a home. During this second meeting, Investor 4 signed the investment documentation that Zhong provided.

**D.     Defendants' Scheme to Defraud, Misrepresentations, and Omissions**

      **1.     Defendants' Misuse of EB-5 Investments' Funds**

43.     The First PPM and the Second PPM describe EB-5 Investments as financing "real estate construction projects."   The Third PPM states EB-5 Investments will be using investor funds "for use in various projects associated with the developing of the City Center Project," a mixed-use commercial project planned for Port St. Lucie, Florida.   All three PPMs promise "100% of the proceeds of the offering" will be used for the projects described in that PPM.   The subscription agreement states an investor's "funds shall be used only for purposes set forth in the [PPM] in connection with the subscriber's application to immigrate . . . ."

44.     EB-5 Investments' Operating Agreement has provisions limiting Defendants' ability to cause EB-5 Investments to engage in transactions in which Asset Manager, and Zhong and her other affiliated entities had an interest, including the following:

      a.     A Member "shall not take any action that would be reasonably deemed to be harmful to or contrary to the interests of the Company or the purposes stated herein."

      b.     Any of EB-5 Investments' "arrangements, contract [sic], or agreements which benefit the Members, their Family or Affiliates" require consent of the other members.

45.     Defendants caused EB-5 Investments to engage in several transactions, described below, contrary to one or more of the provisions described in paragraphs 43 and 44.   None of these transactions were disclosed to investors or received their consent.

46.     <u>Zhong's Retention of Proceeds from Sales of Corporate Owned Real Estate</u>

As of June 2012, Zhong's mother, father, and brother collectively owned 99% of USI; Zhong owned the remaining 1%.   In June 2012, two agreements purportedly resulted in (a) EB-5 Investments obtaining for a nominal amount the Zhong family's 99% interest in USI, but with (b) Zhong purportedly reserving the right to 50% of USI's profits notwithstanding the fact that

she only owned 1% of USI.  Thereafter, USI—financed predominately by EB-5 Investments or its B.X Wok subsidiary—purchased eleven real estate properties, which it sold in two batches in February and May 2014.  When USI sold the real estate, Zhong claimed an entitlement to 50% of the profits and kept for herself approximately $149,000.

       47.    <u>Oakland Holdings Condominium Purchase and Lease</u>

As of July 2012, Zhong and Attorney were Oakland Holdings' sole members.  In August 2012, Oakland Holdings purchased for $139,000, plus closing costs, an office condominium located 1620 West Oakland Park Boulevard, No. 400, Oakland Park, Florida.  Oakland Holdings paid just under $41,000 in cash and the seller took back a secured mortgage note of $100,000, which required monthly payments of $599.55 for five years, at which time a balloon payment was due for the balance.  Zhong and Attorney split the cash contribution, and Zhong caused EB-5 Investments to pay Zhong's portion of $20,365.  Contemporaneously with the closing of the real estate transaction, Zhong caused EB-5 Investments to lease from Oakland Holdings the office space (which EB-5 Investments rarely uses) for 10 years at $599 per month.  In addition to the rent, between February 2013 and December 2014, EB-5 Investments paid $39,582 to the condo association for the office space.

       48.    <u>Purchase of Properties for Zhong</u>

In November 2012, Zhong used $76,547 of USI funds to purchase for herself individually the property located at 1151 North Platte Lane, Poinciana, Florida.  In September 2014, Zhong used $79,849 of USI funds to purchase for herself individually the property located at 105 Rodney Street, Worcester, Massachusetts.  The purchase of the Worcester, Massachusetts house was also contrary to the representation in the PPMs that "[a]ll projects will be located in the state of Florida."

49.   <u>Auto Expenses</u>

In May 2012, Zhong used $55,000 of EB-5 Investments' funds to buy in her name a new 2013 BMW X5 that she gave to her daughter as a gift.  In August 2013, Zhong used $98,394 of EB-5 Investments' funds to buy in her name a new 2013 Mercedes S550.

50.   <u>Educational Expenses</u>

Between September 2012 and August 2014, Zhong caused USI to spend $59,346 on items such as tutoring services, college applications, and private school tuition for the benefit of the children of her brother and the children of a business partner.

51.   <u>Legal Expenses</u>

Between December 2012 and October 2014, Zhong caused EB-5 Investments to pay legal fees of $13,520 for personal estate planning legal expenses.

52.   <u>Trading Account</u>

In March 2014, Zhong transferred $10,000 from USI to an account in her name at Vanguard Group.

53.   <u>Miscellaneous Personal Expenses</u>

Between November 2011 and October 2014, Zhong used approximately $34,760 of EB-5 Investments funds for expenses that have no legitimate business purpose, such as a Carnival cruise, personal real estate taxes, homeowner association fees, health and other personal care expenses, and pet care expenses.

54.   <u>Investment in Top Sun</u>

On December 1, 2011, Zhong formed Top Sun, a solar energy business, and obtained a 55% ownership interest.  On December 18, 2011, Zhong caused EB-5 Investments to purchase her 55% interest in Top Sun for $66,000.  Subsequently, from February 2013 to June 2014, Zhong transferred approximately $15,000 from EB-5 Investments and B.X Wok to Top Sun.

55.   <u>Purchase and Upkeep of Boat</u>

In January 2013, the Zhong-controlled entity B.X Property purchased a boat—a 1999 Sea Ray—for a total cost of $175,495.  USI provided $16,800 of the purchase price; the remaining $158,695 came from EB-5 Investments.  After the boat purchase, during 2013 and 2014, USI spent more than $35,000 on boat related expenses.

56.   <u>Purchase of Home Used by Zhong as Residence</u>

In  November  2012,  Zhong  caused  EB-5  Investments  to  provide  approximately $2,500,000  toward  Ocean  LP's  purchase  of  the  residence  located  at  2624  South  Ocean Boulevard,  Highland  Beach  Florida.    Shortly  thereafter,  EB-5  Investments  obtained  for  a nominal amount Zhong and her daughter's 99% interest in Ocean LP.  In March 2015, after Zhong became aware of the Commission's investigation, Zhong caused Ocean LP to transfer the property by Quit Claim Deed to EB-5 Investments.  Zhong has used this property as a residence and continued to do so (with her daughter) as of August 2015.

### 2.   **Omissions Regarding Zhong's Background**

57.   The PPMs represent that although EB-5 Investments "is newly organized and has no operating history upon which investors may evaluate its performance, the Manager [Asset Manager], its officers [Zhong] and affiliates, and the model on which the Company has been structured, all evidence an extensive history and track record . . . ."  EB-5 Investments' business plan also details Zhong's experience as a developer in New Zealand.

58.    In meetings with potential investors, Zhong cited her background in real estate as a reason to invest.  For example, Zhong told Investor 2 she had worked for and then had owned a real estate company.  Zhong told Investor 3 she had been in the real estate development and investment business for years and had previously lived in New Zealand, where she did not conduct business.

59.    Defendants failed to disclose to investors the following:  (a) that Zhong was the subject of a bankruptcy proceeding against her in New Zealand, and (b) Zhongs' role as director and shareholder of Winsun Developments Limited, a New Zealand real estate development company placed into voluntary liquidation in Auckland, New Zealand in about 2008. Defendants' failure to disclose these facts rendered materially misleading the PPMs' statements regarding Zhong's extensive history and track record and the verbal statements Zhong made to investors regarding her history in the real estate business.

### 3.    False Statements Regarding Financial Statements

60.    Between March 2011 and August 2014, EB-5 Investments falsely claimed in its PPMs and in each version of the corresponding operating agreement that it would prepare and provide investors with annual unaudited financial reports.  For example, the PPMs state that EB-5 Investments would "provide each Member [investor] with unaudited annual financial reports with respect to the operations of the Company."

61.    Contrary to these representations, EB-5 Investments neither prepared nor provided unaudited financial reports to investors.

62.    The lack of unaudited financials enabled EB-5 Investments and Zhong to conceal from investors the misuse of their investment funds and the performance of their investment.

### 4.    False Statements Regarding Escrowing Investor Funds

63.    Between approximately March 2011 and March 2013, EB-5 Investments falsely claimed in its PPM, escrow agreement, and business plan that investor funds would be held in escrow pending USCIS approval of their I-526 petitions.  In its First and Second PPMs, EB-5 Investments stated it would hold investors' funds in escrow "until such time as such investor's I-526 Petition has been approved by the [USCIS]."  EB-5 Investments also provided investors with an escrow agreement stating that "[n]o amount of the Subscriber's capital contribution of $500,000 shall be released into the job-creating entity until approval of the I-526 . . . ."

64.    However, between November 8, 2012 and at least April 25, 2013, Zhong and EB-5 Investments transferred a net of approximately $6.5 million of investor funds out of investors' escrow accounts before USCIS had approved their I-526 petitions.

65.    After improperly removing investors' funds from the escrow accounts, Defendants attempted to conceal the transfers by asking investors to sign a consent form ("Consent") stating the investor consented to the release of funds from the escrow account. However, the Consent failed to advise investors that the investors' funds had already been released from escrow.

### 5.    False Statements Regarding Investors'
### Active Involvement in EB-5 Investments

66.    The EB-5 Program requires the immigrant investor to "be engaged in the management of the new commercial enterprise, either through the exercise of day-to-day managerial control or through policy formulation, as opposed to maintaining a purely passive role in regard to the investment."

67.    In order to claim compliance with this requirement, EB-5 Investments' Offering Materials repeatedly represented to investors that they would be permitted to participate in policy

decisions at an annual meeting of all of EB-5 Investments' members "in order to satisfy the 'active involvement' requirement."

68.     EB-5 Investments, through Attorney, submitted the same Offering Materials to USCIS in order make it appear EB-5 Investments was complying with this requirement.

69.     Contrary to these representations, EB-5 held no such meetings.

### 6.     Defendants' Continued Misuse and Dissipation of Funds and Assets

70.     On August 26, 2015, at a time they were aware of the Commission's investigation in this matter, Zhong and Asset Manager retained an accountant and his firm to act as a "Servicing Agent."  The accountant and his firm are not independent and are currently retained by EB-5 Investments to do certain tax compliance and other work.

71.     On about August 26, 2015, Zhong transferred to Relief Defendant Investor Asset a security interest in and to all real property EB-5 Investments owns, as well as three vehicles and boat purchased with EB-5 Investments funds.  Investor Asset also received an assignment of the proceeds from the sale or refinance of any of the assets of EB-5 Investments or Asset Manager.

72.     The agreement between Zhong and Investor Asset does not remove Zhong's control of the remaining investor funds, and she remains the signatory on the bank accounts of Asset Manager and the Relief Defendants.  The agreement makes no provision for collecting rent payments from the EB-5 rental properties.   As currently structured, the agreement does not include all properties purchased with EB-Investments funds.

73.     The agreement described above in paragraph 46, giving Zhong 50 percent of the profits from the sale of any USI-owned property, remains in effect.  Further, Zhong is currently in the process of encumbering the real property purchased using EB-5 Investments funds, and has outstanding loan petitions to refinance these properties.

74.     In May 2015, when Zhong initially testified in this matter, EB-5 Investments and its subsidiaries had about $1 million in their account, but by her second testimony on August 2015, only about $20,000 remained.

75.     On September 14, 2015, Defendants sent investors a Third Amendment to the PPM, offering them the opportunity to settle or recommit to their investments.

## V.     CLAIMS FOR RELIEF

### COUNT 1 (Section 17(a)(1) of the Securities Act)

76.     The Commission adopts by reference paragraphs 1 through 75 of this Complaint.

77.     Defendants Asset Manager and Zhong, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly employed devices, schemes, or artifices to defraud.

78.     By reason of the foregoing, Asset Manager and Zhong violated Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

### COUNT 2 (Section 17(a)(2) of the Securities Act)

79.     The Commission adopts by reference paragraphs 1 through 75 of this Complaint.

80.     Asset Manager and Zhong, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

81.     By reason of the foregoing, Asset Manager and Zhong violated Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

### COUNT 3 (Section 17(a)(3) of the Securities Act)

82.     The Commission adopts by reference paragraphs 1 through 75 of this Complaint.

83.     Asset Manager and Zhong, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchasers.

84.     By reason of the foregoing, Asset Manager and Zhong violated Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

### COUNT 4 (Section 10(b) and Rule 10b-5(a) of the Exchange Act)

85.     The Commission adopts by reference paragraphs 1 through 75 of this Complaint.

86.     Asset Manager and Zhong, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

87.     By reason of the foregoing, Asset Manager and Zhong violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

### COUNT 5 (Section 10(b) and Rule 10b-5(b) of the Exchange Act)

88.     The Commission adopts by reference paragraphs 1 through 75 of this Complaint.

89.     Asset Manager and Zhong, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

90.     By reason of the foregoing, Asset Manager and Zhong violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

**COUNT 6 (Section 10(b) and Rule 10b-5(c) of the Exchange Act)**

91.     The Commission adopts by reference paragraphs 1 through 75 of this Complaint.

92.     Asset Manager and Zhong directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, engaged in acts, practices, and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

93.     By reason of the foregoing, Asset Manager and Zhong violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c).

## VI.    RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### A.    Permanent Injunctive Relief

Issue a Permanent Injunction restraining and enjoining Defendants from directly or indirectly violating Sections 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### B.    Sworn Accounting

Issue an Order directing Defendants and Relief Defendants to provide a sworn accounting of all proceeds received resulting from the acts and/or courses of conduct alleged in this Complaint.

### C.    Asset Freeze

Issue an Order freezing the assets of Defendants and Relief Defendants, until further Order of the Court.

**D.**     **Appointment of a Receiver**

Appoint a receiver over the Defendant Asset Manager and the Relief Defendants.

**E.**     **Records Preservation**

Issue an Order restraining and enjoining Defendants and Relief Defendant, their directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, from, directly or indirectly, destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner, any of the books, records, documents, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property of or pertaining to Defendants and Relief Defendant wherever located and in whatever form, electronic or otherwise, that refer, reflect or relate to the acts or courses of conduct alleged in this Complaint, until further Order of this Court.

**F.**     **Expedited Discovery**

Issue an Order expediting discovery for the Commission to take during the period between issuance of a temporary asset freeze and the hearing on whether the asset freeze should continue during the pendency of the litigation.

**G.**     **Repatriation Order**

Issue an Order directing Defendants and Relief Defendants to repatriate any funds held at any bank or other financial institution not subject to the jurisdiction of the Court.

**H.**     **Disgorgement**

Issue an Order directing Defendants and Relief Defendant to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### I.    Civil Penalty

Issue an Order directing Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d)(3).

### J.    Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VII.    RETENTION OF JURISDICTION

The Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable petition or motion by the Commission for additional relief within the jurisdiction of this Court.

November 3, 2015                                  Respectfully submitted,

                              By:    _____
                                     Alejandro Soto
                                     Senior Trial Counsel
                                     Florida Bar No. 172847
                                     Telephone: (305) 982-6313
                                     Email: sotoal@sec.gov

                                     Attorney for Plaintiff
                                     **SECURITIES AND EXCHANGE
                                     COMMISSION**
                                     801 Brickell Avenue, Suite 1800
                                     Miami, Florida 33131