## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 15-cv-62323-JAL

SECURITIES AND EXCHANGE COMMISSION,

      **Plaintiff,**

**v.**

**EB5 ASSET MANAGER, LLC,**
**and LIN ZHONG A/K/A LILY ZHONG,**

      **Defendants, and**

**U.S. EB-5 INVESTMENTS LLC,**
**OAKLAND OFFICE HOLDINGS LLC,**
**B.X WOK CONSTRUCTION LLC,**
**US INVESTMENT LLC d/b/a US INVESTMENT FL LLC,**
**TOP SUN ENERGY LLC,**
**OCEAN BLVD. FAMILY LIMITED PARTNERSHIP, LTD.,**
**B.X PROPERTY MANAGEMENT LLC,**
**US1 REAL ESTATE DEVELOPMENTS, LLC,  and**
**INVESTOR ASSET PROTECTION LLC,**

      **Relief Defendants.**

_____/

FILED by _____ D.C.

NOV 0 4 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

### PLAINTIFF'S EMERGENCY MOTION FOR
### APPOINTMENT OF RECEIVER AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff Securities and Exchange Commission moves for an Order appointing a Receiver over Defendant EB5 Asset Manager ("Asset Manager") and Relief Defendants EB-5 Investments, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean BLVD. Family Limited Partnership, Ltd., B.X Property Management LLC, and US1 Real Estate Developments, LLC, with full and exclusive power, duty, and authority to: administer and manage the business affairs, funds, assets, choses in action, and any other property of the Defendant and Relief Defendants; marshal

and safeguard all Defendant's and Relief Defendants' assets; and take whatever actions are necessary for the protection of investors.

The grounds for this Motion are fully set forth below in the Memorandum of Law. As additional support, the Commission incorporates the factual discussion in the Memorandum of Law in support of its Emergency Motion for Asset Freeze Order and Other Relief ("Asset Freeze Motion").

The Commission's staff has solicited expressions of interest from three potential receivers it believes are well-suited to handle this matter, and attaches the credentials of these candidates as Exhibits A, B, and C to this Motion. After considering these candidates, the Commission's staff believes the interests of defrauded investors would best be served by appointing Angel A. Cortiñas to serve as Receiver over Defendant and Relief Defendants. Mr. Cortiñas, whose credentials are attached as Exhibit A, is a shareholder at the law firm Gunster with more than twenty years of extensive experience in the area of commercial litigation. Mr. Cortiñas is particularly well-suited to serve as Receiver in this case because he has significant experience investigating complex corporate and securities fraud matters and overseeing the appointment of receivers in such cases. As the former Chief of the Economic Crimes Section for the U.S. Attorney's Office in the Southern District of Florida, Mr. Cortiñas supervised multi-hundred million dollar fraud investigations and cases in which receivers were appointed by the court. Mr. Cortiñas also presided over numerous matters involving the appointment of a receiver as a former judge on Florida's Third District Court of Appeal.

If appointed as Receiver, Mr. Cortiñas intends to have significant involvement in all tasks required to efficiently resolve the issues related to this matter. Mr. Cortiñas and the firm have agreed to a discount of their normal hourly rates. Mr. Cortiñas will charge $430 per hour,

Jonathan Kaskel will charge $230 per hour, and paralegal staff will charge $100 per hour. Mr. Cortiñas has advised us he has no conflict of interest in this matter, and is ready, willing, and able to serve as Receiver. Indeed, Mr. Cortiñas is currently coordinating with the Commission staff on this matter so that, if appointed, he can immediately proceed to discharge his duties.

Therefore, the Commission recommends Mr. Cortiñas, who has the capability and experience necessary for carrying out the tasks that will be required of the Receiver and has indicated a willingness to serve. As the Commission indicated previously, we sought expressions of interest from two additional candidates who are also well-qualified to serve as Receiver and do not have a conflict of interest. Accordingly, if the Court does not agree with the Commission's recommendation, the Commission suggests the Court consider any of the two alternative candidates, whose credentials are attached as Exhibits B and C.

## MEMORANDUM OF LAW

The appointment of a Receiver is a well-established equitable remedy available to the Commission in civil enforcement proceedings. *See, e.g.*, *SEC v. First Financial Group of Texas*, 645 F.2d 429, 438 (5th Cir. 1981); *see generally* Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77(v)(a); and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78(aa). Appointing a Receiver is particularly appropriate in cases where a defendant, through its management, has defrauded members of the investing public. *Id.* In such cases, without the appointment of a Receiver to maintain the *status quo*, the investor assets will be subject to diversion and waste to the detriment of those who were induced to invest in the scheme. *Id.*; *See also SEC v. R.J. Allen & Associates, Inc.*, 336 F. Supp. 866, 891 (S.D. Fla. 1974).

Here, a Receiver is appropriate because investor funds are in serious risk of further dissipation. As discussed in more detail in the Asset Freeze Motion, Defendants Lin Zhong a/k/a

Lily Zhong and EB5 Asset Manager have conducted an offering fraud, and have raised at least $8.5 million from at least 17 investors by offering and selling securities in the form of units consisting of membership interests in Relief Defendant EB-5 Investments LLC.

Defendants have made numerous material misrepresentations and omissions to investors through the private placement memoranda ("PPM's") and marketing materials, including false claims that Defendants would invest EB-5 Investments funds in projects that qualify under the EB-5 visa program administered by United States Citizenship and Immigration Services ("USCIS"). As set forth in more detail in the Complaint and Asset Freeze Memorandum, Defendants used this lure, and the promise of investment returns, to target Chinese investors in a scheme to sell securities to finance real estate projects in Florida.

However, rather than use the money solely for the projects for which it was purportedly raised, Defendants Zhong and Asset Manager have improperly diverted approximately $900,000 of EB-5 Investment funds in undisclosed and improper transactions. Zhong misappropriated these funds by transferring them to Relief Defendant US Investment LLC d/b/a US Investment FL LLC ("USI"), which is a subsidiary of EB-5 Investments in which she secretly holds an ownership interest, Relief Defendant B.X Wok Construction LLC ("B.X Wok"), and her personal bank account. From there, Zhong transferred EB-5 Investments funds to purchase the $2.5 million oceanfront home where she currently resides, a 48-foot boat, and luxury cars, as well as to pay her daughter's educational expenses, fund her brokerage account, and support her other companies.

Defendants' misrepresentations and omissions in the EB-5 Investments offering documents were equally brazen. Defendants misrepresented how they would use EB-5 Investments funds, the financial reports they would provide investors, the safety of the

4

investment, and even the location of the projects EB-5 Investments was funding.  While touting the investment, Defendants omitted Zhong's history of bankruptcy proceedings and failed business dealings as well as her conflicts of interest.

All of the misappropriations, misrepresentations, and omissions described in the Commission's Complaint and other papers filed in this action occurred under the auspices of Zhong and Asset Manager.  It would clearly not be in the best interests of investors to allow Zhong to continue to control the bank accounts of Asset Manager and the Relief Defendants.  While Zhong has assigned the rights to some of EB-5 Investments' assets to the company's accountant through Relief Defendant Investor Asset Protection LLC ("IAP"), this gives no assurance against further dissipation.  Zhong's counsel created this company on August 25, 2015, at a time when Zhong was aware of the Commission's investigation in this matter.  Zhong did not obtain investor consent to her transfer of rights to Investor Asset Protection, and this transfer is merely an effort to forestall a Court-appointed Receiver.  Indeed, Zhong has admitted in recent testimony that she did not transfer all of EB-5 Investments' assets to IAP and continues to control the bank accounts of the Relief Defendants, including EB-5 Investments.  For these reasons, Zhong's appointment of the accountant fails to provide the assurance investors need to the prevent further dissipation of the EB-5 Investments funds which Zhong improperly transferred to Relief Defendants Oakland Office Holdings LLC, B.X Wok Construction LLC ("B.X Wok"), US Investment LLC d/b/a US Investment FL LLC ("USI"), Top Sun Energy LLC, Ocean BLVD. Family Limited Partnership, Ltd., B.X Property Management LLC, and US1 Real Estate Developments, LLC ("US1").

For each Relief Defendant with a bank account, Zhong controls it.  Three of the Relief Defendants, USI, and US1 are subsidiaries of EB-5 Investments.  Zhong is the manager of every

Relief Defendant, an owner of USI, and has exclusive control of the bank account for every Relief Defendant that has one – namely, EB-5 Investments, Oakland Holdings, USI, and Top Sun.  As set forth in the Asset Freeze Motion and Complaint, Zhong has used these entities for her personal benefit at the expense of the investors, and uses their bank accounts as her personal piggybank.  Absent a Receiver, there will be no assurance that any funds will exist to pay disgorgement.

Additionally, Defendants offered an investment that promised returns as well as a path to United States residency through the EB-5 visa program.  Several of the investors are currently residing in the United States, and some have visas pending.  As of September 14, 2015, Zhong has advised investors that EB-5 Investments and EB5 Managers are merely shutting down their operation and will no longer work on the visas.  Zhong tells investors their applications will therefore most likely be unsuccessful.

A Receiver is required to take control of Asset Manager and all Relief Defendants before further damage is done to the investors, prevent further dissipation of investor assets, and attempt to locate and recover those assets.

## CONCLUSION

For the foregoing reasons, the Commission requests that the Court grant its emergency request for the appointment of a Receiver over Defendant EB5 Managers and Relief Defendants EB-5 Investments, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean BLVD. Family Limited Partnership, Ltd., B.X Property Management LLC, and US1 Real Estate Developments, LLC.

WHEREFORE, the Commission respectfully requests that this Court appoint Angel A. Cortiñas, or any other suitable person, as Receiver of Defendant EB5 Manager and the Relief Defendants.

November 4, 2015

Respectfully submitted,

By: _____

Alejandro O. Soto
Senior Trial Counsel
Fla. Bar No. 172847
Direct Dial:  (305) 982-6313
E-mail: SotoAl@sec.gov

Attorney for Plaintiff
**SECURITIES AND EXCHANGE   COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida  33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154



Writer's Direct Dial Number: 305-376-6043
Writer's E-Mail Address: acortinas@gunster.com

September 14, 2015

*Via E-Mail*: **BerlinA@sec.gov**

Ms. Amie Riggle Berlin, Esquire
Senior Trial Counsel
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida  33131
Miami Regional Office
305-982-6322 (telephone)
BerlinA@sec.gov

      Re:    <u>U.S. EB-5 Investments LLC</u>

Dear Ms. Berlin:

      Thank you very much for considering me as receiver in litigation involving the above-referenced party. Our law firm has no conflicts with the individuals and entities you sent by email yesterday for our review.  As you have requested, I am enclosing resumes for myself and Jonathan H Kaskel, Esq., the associate who would be working me on the Receivership.  For convenience, the resumes can also be found at: http://gunster.com/staff/attorneys/angel-a-cortiñas and http://gunster.com/staff/attorneys/jonathan-h-kaskel.

      I joined Gunster in 2013 as an equity shareholder in the Miami office after serving for more than eight years as an appellate judge on Florida's Third District Court of Appeal. Before being a judge, I worked as a federal prosecutor in Miami for over thirteen years and served as the Office's Chief of the Economic Crimes Section. As an Assistant U.S. Attorney, I was lead counsel on numerous complex white-collar fraud cases, including the successful prosecution of Columbia HCA, which at the time was the largest fraud in U.S. History.

      As the Chief of the Fraud Section of the U.S. Attorney's Office in Miami, I supervised twenty prosecutors and oversaw all criminal fraud investigations and prosecutions involving corporate and securities fraud, health care fraud, bank fraud, computer crimes, and tax fraud charges. Notable cases involved: (1) corporate and securities fraud, such as the prosecution of the top officers of Hamilton Bank ($300 million in investor losses from the collapse of publicly traded Hamilton Bancorp), Bakest/Banco Espirito Santo ($150 million fraud committed through the submission of false invoices and receivables to lender) and Michael Lauer, ($500 million in investor losses from stock manipulation and overstating hedge fund valuations); (2) several multi-million dollar fraudulent investor schemes and Ponzi schemes; and (3) multi-million dollar healthcare fraud schemes.



EXHIBIT
A
PENGAD-Bayonne,N.J.

September 14, 2015
Ms. Amie Riggle Berlin
Page 2
_____/

My legal and managerial experience will effectively serve the efforts of the Securities and Exchange Commission and allow me to serve as receiver in a cost efficient manner while accurately and concisely reporting my efforts to the Court and the parties. As receiver, I will secure further efficiencies from Gunster, a state-wide firm with 12 offices Florida, including Miami, Florida and Stuart, Florida, and our headquarters in West Palm Beach.

We have made arrangements to immediately take control of the business operations of U.S. EB-5 Investments LLC and related entities and properties upon appointment as receiver by the Court. We look forward to working with the SEC, the Court, as well as the investor victims. Because we sincerely appreciate the public service nature of receivership actions, each person on our team has agreed to substantially reduce his or her standard rates. The following table provides each professional's standard rates and the discounted rates we would provide for this engagement:

| Professionals | Standard Rate | Discounted Rate |
|---|---|---|
| Angel A. Cortiñas | $750.00 | $430.00 |
| Jonathan Kaskel | $375.00 | $230.00 |
| Gunster Paraprofessionals | $220.00 | $100.00 |

Our firm is extremely qualified and well-suited to handle the duties of a court-ordered receiver. We sincerely look forward to working with the SEC, the Court, and the investor victims.

Sincerely,

Angel A. Cortiñas
Shareholder

Attachments:
    Conflicts of Interest and Background Information
    SEC Receivership Billing Information Signature Page
    Resumes of Angel A. Cortiñas and Jonathan H Kaskel

## CONFLICTS OF INTEREST AND BACKGROUND INFORMATION

I am providing the Securities and Exchange Commission ("Commission") with the following conflict of interest and background information concerning Angel A. Cortiñas, the Receiver for U.S. EB-5 Investments LLC. I agree to supplement this information if any of the information herein changes, within thirty days of such change. I agree to provide such other Conflict of Interest information as requested by the Commission or its staff, and to take such steps as reasonably requested by the Commission or its staff in order to mitigate any conflicts that the Commission or its staff determine may exist, in their sole discretion.

Except where otherwise noted, for purposes of the information request below, "you" means you as an individual, as well as any spouse or dependents, and separately, any firm, partnership, joint venture, or other business in which you are an officer or director, or in which you have a substantial financial interest.

Except where otherwise noted, this information is requested for any responsive matters existing during the last five years. Also, if during the course of your duties you become aware of responsive information concerning a potential claimant in the matter listed above, you must promptly supplement your response to disclose that information:

1.      List all contracts, consulting engagements, employment, service as an officer or director, or other work of any kind you have performed for any defendant/respondent in this matter, or any of its parents, subsidiaries, or other affiliates, or any claimant in this matter. Include any responsive matters existing during the last ten years. **NONE**

2.      List any financial interests in or with the defendant/respondent, its parents, subsidiaries, or other affiliates, or any claimant in this matter (e.g., stocks, bonds, options, other debt or equity interests, partnerships, retirement plans). **NONE**

3.      List all other personal or professional relationships or interests in or with the defendant/respondent, its parents, subsidiaries, or other affiliates, or with any of their officers or directors, or any claimant in this matter, not listed above. **NONE**

4.      List all matters in which you have been retained as a Receiver, Distribution Fund Administrator, Distribution Consultant, or as a subcontractor, agent or other service provider, in connection with any civil action or administrative proceeding by the Commission. **NONE.**

5.      List all other prior or existing cases, matters, or proceedings in which the Commission has an interest, in which you have been retained or served as a witness, consultant, or other expert. **NONE**

6.      Identify any disciplinary proceedings, felony criminal indictment or information (or equivalent formal charge) or a misdemeanor criminal information (or equivalent formal charge), civil proceedings or actions against you personally by any Federal, state, local, or foreign entities and the results of those proceedings. Include any responsive matters regardless of when they arose. **NONE**

7.     Identify any actual or potential conflicts of which you are aware, regardless of when they arose, that are not identified or addressed in paragraphs 1 through 5 above, but that may affect the performance of your duties under this appointment. **NONE**

If you believe any of the information provided in response to these requests is non-public or confidential, you may request confidential treatment by the Commission pursuant to the procedures set forth at 17 C.F.R. § 200.83.

**Under penalty of perjury, I declare that I have examined the information given in this statement, and attached hereto, and, to the best of my knowledge and belief, it is true, correct, and complete.  I understand that any material misstatements or omissions made by me herein or in any attachments hereto may constitute criminal violations, punishable under 18 U.S.C. § 1001.**

By:     _____
        Signature

Name:     Angel A. Cortiñas

Title:     Receiver

On behalf of:   _____
        Receiver/Distribution Fund Administrator/Distribution Consultant

        _____
        Defendant/Respondent Name, Case No.


MIA_ACTIVE 4171041.1

2

SEC Receivership Billing Instructions, pg. 11 of 11

Secretarial, library, word processing, document preparation (other than by professionals or paraprofessionals), data processing, and other staff services (exclusive of paraprofessional services), including overtime for the foregoing, are not reimbursable. Charges for proofreading for typographical or similar errors are not reimbursable whether the services are performed by a paralegal, secretary, or temporary staff.

    (l)  <u>Communications with Investors.</u>

Where appropriate, the estate should promptly create a website, and update the website as appropriate, to provide information as to the activities and condition of the estate to investors. In addition, any necessary basic communications with investors should be handled by clerical or paralegal staff (or comparatively paid staff) to the extent possible. Expenses stemming from a failure to comply with this policy will not be submitted.

Candidate for Appointment as Receiver in
Civil Action Commenced by the
U.S. Securities and Exchange Commission

Date:   September 14, 2015

[Printed Name] (Angel A. Cortinas, Esquire
[Address 1]  600 Brickell Avenue
[Address 2]  Suite 3500
[Address 3]  Miami, Florida 33131
[E-Mail Address] acortinas@gunster.com
[Phone Number] 305-376-6043
[Fax Number]  305-376-6010

# Angel A. Cortiñas

Shareholder





**PRIMARY OFFICE**
600 Brickell Avenue
Suite 3500
Miami, FL 33131

T: (305) 376-6043
F: (786) 425-4088
acortinas@gunster.com

**PRACTICE AREAS**

Business Litigation

Securities & Corporate
Governance

Appellate

Eminent Domain & Property
Rights

Angel A. Cortiñas is a shareholder and co-chair of the firm's Appellate practice group. He is also a member of the firm's Women's Leadership Forum. Angel served as an appellate judge on Florida's 3rd District Court of Appeal for more than 8 years. He reviewed civil and criminal appeals from trial courts, authoring over 500 appellate opinions. He also served as a trial judge, by Florida Supreme Court appointment, on civil and criminal jury trials.

Prior to his judicial tenure, Angel worked for 13 years as a federal prosecutor and was the lead trial attorney in the U.S. Attorney's Office's investigation and successful prosecution of Columbia HCA and Olsten Corporation, which was the largest fraud case in U.S. history and the most comprehensive health care fraud investigation ever undertaken by the federal government.

As the former chief of the Fraud Section of the U.S. Attorney's Office in Miami, he supervised twenty prosecutors and oversaw all criminal fraud investigations and prosecutions involving corporate and securities fraud, bank fraud, health care fraud, computer crimes, tax fraud and other white collar offenses. He also worked in and oversaw the Health Care Fraud Section of the U.S. Attorney's Office in Miami for many years, working closely with hospitals, as well as with state and federal regulators.

Angel has tried over 30 jury trials to verdict in federal court and coordinated over 100 complex grand jury investigations. He has also authored numerous appellate briefs and argued before the 11th Circuit Court of Appeals.

**Civil & White Collar Crime**

Angel's practice includes the representation of individuals and companies in civil business litigation, as well as white collar criminal matters. He represents clients in both state and federal courts. He also represents clients in FCPA, False Claims Act and other anti-fraud matters; designs and implements compliance programs tailored to the particular needs of the client; conducts internal investigations; and advises clients on post-violation remediation. His extensive grand jury and trial experience allow him to effectively represent business entities

# Angel A. Cortiñas

Shareholder



and individuals in responding to government investigations and prosecutions.

**Appeals**

Angel's recent appellate experience includes successfully representing a beneficiary of an Estate and Trust in an appeal by another beneficiary to invalidate a Trust and Will, representing an insured and insurance administrator in a pending federal court appeal, successfully representing an investment company in a state court appeal, successfully representing a developer in a challenge brought by a neighborhood association, and successfully representing a client in responding to a petition for a writ of certiorari pertaining to a discovery issue.

**Mediation, Arbitration & Private Judging**

Angel regularly handles mediations and has successfully mediated many complex cases and disputes. Because Angel is also fluent in Spanish and Portuguese, he is able to conduct mediations in those languages. Angel treats each mediation as a unique matter and, after studying the particularities of a dispute, seeks to craft novel settlement solutions.

Angel is also engaged for private judging matters, moot judging of appellate oral arguments and arbitrations.

# Angel A. Cortiñas
Shareholder



**GUNSTER**
FLORIDA'S LAW FIRM FOR BUSINESS

## EDUCATION

Harvard Law School, J.D., cum laude, 1987

Brown University, B.A., magna cum laude, Latin American Studies, Political Science, 1984

Phi Beta Kappa

## BAR & COURT ADMISSIONS

Massachusetts Bar, 2014

Florida Bar, 1989

U.S. District Court

Northern District of Florida

Southern District of Florida

Middle District of Florida

U.S. Court of Appeals

11th Circuit

## PROFESSIONAL ASSOCIATIONS & MEMBERSHIPS

American Bar Association, Appellate Practice Section, subcommittee chair

Florida Bar

Dade County Bar Association

Federal Bar Association

## HONORS

*The Best Lawyers in America®,* Commercial Litigation Law, 2016

Attorney General's Exceptional Service Award, U.S. Department of Justice, 2001

National Crime Victims Award, U.S. Department of Justice, 2000

## REPRESENTATIVE MATTERS

Conducted internal investigation for a publicly traded company client

Represented Ultra Music Festival before the Miami City Commission on contract issues

Mediated a dispute on preservation of Tequesta Indian site in downtown Miami

Mediated modification of landmark homeless settlement agreement in *Pottinger, et al. v. City of Miami,* U.S. District Court for the Southern District of Florida

Argued appeal on behalf of Grand Birch, LLC in *Citizens for Responsible Growth v. Grand Birch,*

*LLC* resulting in final order denying petition for a writ of certiorari

Lead counsel for U.S. in the Southern District of Florida fraud claims against Columbia HCA and Olsten Corporation's subsidiaries

Supervised and oversaw all aspects of investigation and prosecution of the top officers of Hamilton Bank regarding $300 million in investor losses due to the collapse of publicly traded Hamilton Bancorp

Supervised investigation and prosecution of multiple defendants in Bankest/Banco Espirito Santo regarding $225 million fraud

Supervised investigation of Lancer Management Group regarding $500 million in investor losses

Lead counsel for U.S. in criminal prosecution of Princess Cruises, Inc. for environmental crimes

Lead counsel for U.S. on numerous fraud and tax cases

Lead counsel for U.S. on numerous environmental cases and investigations

Lead counsel on over 30 jury trials in federal court

Lead appellate counsel on numerous appeals before the 11th Circuit Court of Appeals

## PRESENTATIONS & PUBLICATIONS

Lecturer, ABA Appellate Section, "Sound Advice," 2013

Lecturer, ABA White Collar Crime National Institute, 2004

Lecturer, Florida Bar International Law Section, 2003

Instructor, U.S. Department of Justice, Anti-corruption, corporate compliance, fraud, money laundering and white collar crime, 1995-2004

## CIVIC & COMMUNITY SERVICE

Local Rules Committee, U.S. District Court for the Southern District of Florida, 2013-present

Bench and Bar Committee, U.S. District Court for the Southern District of Florida, 2013-present

Florida Supreme Court, Committee on Jury Instructions in Business Cases, 2006-08

Florida Bar, Committee on Pro Bono Legal Services, 2005-10

Miami Senior High School, Mock Trial Team, volunteer coach, 2005-06

Legal Services of Greater Miami, director, 1991-2001

Miami Senior High, Legal and Public Affairs Program, mentor, 2000-02

Governor's Commission for a Sustainable South Florida, 1994-95

# Angel A. Cortiñas

Shareholder

**GUNSTER**
FLORIDA'S LAW FIRM FOR BUSINESS

Brown University

    Alumni board of governors, 1994-95

    Club of Dade

# Jonathan H Kaskel

Associate





**PRIMARY OFFICE**
600 Brickell Avenue
Suite 3500
Miami, FL 33131

T: (305) 376-6023
F: (305) 376-6010
jkaskel@gunster.com

**PRACTICE AREAS**

Business Litigation

Jonathan Kaskel represents clients in trial and on appeal, striving always to offer practical, realistic solutions to complex legal problems.

Through a diverse litigation practice, Jonathan has advocated, counseled and advised a wide ranging clientele, from state and national banks, to developers and general contractors, to prominent individuals embroiled in estate and trust disputes.

# Jonathan H Kaskel

Associate

**GUNSTER**

FLORIDA'S LAW FIRM FOR BUSINESS

## EDUCATION

University of Florida, Gainesville, cum laude, J.D. 2007

University of Florida, Gainesville, B.A., Economics & Political Science, cum laude, 2004

## BAR & COURT ADMISSIONS

United States District Court for the Middle District of Florida, 2014

United States District Court for the Southern District of Florida, 2012

United States Court of Appeals for the Eleventh Circuit, 2013

## PROFESSIONAL ASSOCIATIONS & MEMBERSHIPS

Dade County Bar Association, director

American Bar Association, member

Florida Bar Grievance Committee, 11th Circuit

## HONORS

AV Preeminent Rated as independently determined by Martindale-Hubbell

Honors in Appellate Advocacy, *Journal of Law and Public Policy*, Book Award

Florida *Super Lawyers*, "Rising Star," 2015

## REPRESENTATIVE MATTERS

Counsel to lender in multi-million dollar check kiting litigation

Counsel to state chartered bank on first impression issue before the Eleventh Circuit on the federal banking law preemption of state law

Counsel to national bank in suit to collect on multi-million dollar notes and foreclose security interest in real and personal property located in several states

Counsel to major Miami music festival in dispute with City of Miami

Counsel to online payment systems company in multi-state, federal class action litigation

Litigated issue of first impression in the Southern District of Florida regarding the application of The Edge Act, 12 U.S.C. § 632. *CI Intern. Fuels, Ltda. v. Helm Bank, S.A.*, 707 F. Supp. 2d 1351 (S.D. Fla. 2010)

Briefing of insurance policy interpretation dispute for the Florida Supreme Court, *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 567 (Fla. 2011)

Defended bank against claim for breach of fiduciary duty, *Branch Banking & Trust Co. v. Nat'l Fin. Services, LLC*, 2014 WL 2019301 (M.D. Fla. 2014)

Argued issue of first impression in the United States Eleventh Circuit Court of Appeals regarding the National Bank Act's, 12 U.S.C. § 21 et seq., preemption of state law. *Pereira v. Regions Bank*, 752 F.3d 1354, 1355 (11th Cir. 2014)

# ☰ BERGER SINGERMAN

Charles H. Lichtman
Telephone: (954) 712-5138
CLichtman@bergersingerman.com

September 9, 2015

By e-mail to BerlinA@SEC.gov

Amie Riggle Berlin, Esq.
Senior Trial Counsel
U.S. Securities and Exchange Commission
801 Brickell Avenue
Suite 1800
Miami, FL 33131 - 4901

     **Re:   United States Securities and Exchange Receiverships**

Dear Amie:

     Please accept this letter as my request that I be considered for an appointment as a Receiver in lawsuits brought by the United States Securities and Exchange Commission ("SEC"). Stated below is information that supports my qualifications for such position.

## LEGAL BACKGROUND & EXPERIENCE

     Literally, from my first day of work as a lawyer 35 years ago, I have handled significant securities fraud, complex fraud and receivership (or trustee) cases, which are foundational to my being a prudent and successful receiver. Attached is my law firm profile from Berger Singerman that identifies my experience and depth in fraud based cases and receiverships, along with a wide range of other substantive legal areas, all relevant to serving as an SEC receiver.

### Securities and Other Fraud Litigation.

     I estimate that I've handled at least 60 securities fraud and another 150 common law or statutory fraud based cases over my career, probably all of which involved sizeable claims. I have an established track record of great success in winning or obtaining favorable settlements for my victim clients or constituency in these matters and unquestionably, securities litigation, fraud cases and emergency matters are what I am best known for handling. For the past seven years I have been recognized by the Best Lawyers in America guide in four categories as selected by judges and lawyers: Securities Litigation, Bet the Business Litigation, Commercial Litigation and Bankruptcy Litigation. In this last category, I was just named its Lawyer of the Year in Fort Lauderdale. Also, I have participated in the ABA's National Securities Fraud Institute since its inception, and have lectured at it the past five years on D & O insurance, Blue Sky laws, bankruptcy ramifications in securities cases, corporate demand futility and last year, was trial counsel for a mock accounting expert witness hearing jointly presented to both the


EXHIBIT
B

Amie Riggle Berlin, Esq.
Securities and Exchange Commission
Page 2
September 9, 2015

National Securities Fraud Institute and American Institute of Certified Public Accountants. Among other aspects of fraud law, I am well versed in securities primary and secondary liability claims, the PSLRA, RICO, and of course, Ponzi schemes. I am not a criminal lawyer, but I have a strong knowledge base of criminal and forfeiture law and the workings of the SEC, DOJ and IRS.

### Receiverships.

Throughout my career I have been involved in countless receiverships involving a wide range of businesses, and have served in various capacities as a receiver, lead counsel for a receiver or trustee, or counsel seeking appointment of a receiver. While I am not an accountant, I know forensic accounting very well and often conduct my own forensic examinations in my fraud cases. In fact, I am a member of the Association of Certified Fraud Examiners. I know how to read financial statements and public securities filings, which has proven to be useful in handling my fraud-based caseload and receivership work. Through my various case experiences, I have become skilled at tracing money, locating hidden assets, understanding what civil claims to bring against various targets and liquidating those claims and assets efficiently. Perhaps as important as general skills, I thrive under pressure and know how to manage a cohesive team in emergency situations.

Recently, I was appointed Receiver in two noteworthy cases and served as counsel to a Trustee in a third matter. The first case was brought by the Federal Trade Commission involving one of the largest consumer mortgage fraud operations in the country, Freedom Legal Plans. This matter just concluded and the FTC was clear that I collected significantly more money for victims than they expected. Indeed, towards the end of the case I was invited to Washington to lecture to a room full of FTC attorneys on the strategies I used in the Freedom Legal Plans matter that brought about the results. Because that case was so heartbreaking in terms of the impact of the fraud committed on lower middle-class Americans who could least afford to lose any money, much less their homes, and particularly due to a scam, I regularly voluntarily reduced my fees throughout this case and engaged in investigations not charged to the estate, in order to increase the pool of money available to the victims.

Also, in 2015, I was appointed by the presiding judge of the Broward County Business Court as Receiver of the Plantation Fashion Mall, which in part dealt with sophisticated EB-5 issues. I quickly gathered thousands of documents, interviewed witnesses and in the space of only a week drafted an extensive court-filed report that outlined concerns about a massive fraud being committed, including as against potential EB-5 investor victims. Not long after that, the case was moved to bankruptcy court where its existing trustee has been using my work product to pursue a myriad of claims.

I also recently served as Lead Litigation Counsel for Herbert Stettin as Trustee of the Rothstein Rosenfeldt Adler ("RRA") law firm, related to the largest Ponzi scheme in Florida history, involving $1.4 billion in fraudulent transactions. When we finished our work, after only 3¾ years (which was at least 3 years less than what many projected), my team succeeded in providing a 100% distribution to all unsecured creditors of the RRA estate, the highest such percentage payment in a Ponzi scheme in United States history. My duties included winding

≣ BERGER SINGERMAN

Amie Riggle Berlin, Esq.
Securities and Exchange Commission
Page 3
September 9, 2015

down the business operations of RRA, marshaling its assets, first-chairing and overseeing all litigation, and handling investigations and forensic examinations including the tracing of hundreds of millions of dollars through over 30 bank accounts. I know that my decision to reverse engineer the process of proceeding with litigation in over 100 different adversary actions at once, while carefully building a case against a financially more significant defendant is what, in part, led to our 100% recovery. I also served as the liaison with The Florida Bar on RRA attorney disciplinary matters and the Department of Justice on issues related to its criminal investigations. Further, I orchestrated and oversaw the massive electronic discovery process, in terms of extracting and managing data from numerous RRA computer servers containing millions of e-mails and documents. Further, I secured and then oversaw the unprecedented 5 weeks of Scott Rothstein's deposition, which ultimately assured virtually all parties in interest had the opportunity to depose Rothstein in all RRA related litigation.

### Miscellaneous Relevant Experience.

As my attached bio demonstrates, I have also handled complex commercial litigation matters involving a wide swath of businesses, industries and legal subject matters. Many of these cases have given me experience in areas relevant to receiverships and include:

(i)     Commercial finance and numerous different loan structures including secured transactions and prosecuting and defending lender liability claims;

(ii)    Corporate, partnership and LLC law, including shareholder disputes among owners of very significant businesses such as an intentionally renown cruise line, a national pesticide company and a worldwide conglomerate of family owned asphalt companies;

(iii)   Real estate, including commercial foreclosure, leases and landlord tenant disputes;

(iv)    Insurance, including professional liability, D & O/ E & O, plus general liability and comprehensive policy issues;

(v)     Professional liability law including claims against attorneys and accountants;

(vi)    Collection of judgments under Florida, federal and international law, including tracing of assets worldwide, and I have resources and contacts available across the globe;

(vii)   Extensive trial experience including over 150 trials, which I submit is a critical component to being a prudent receiver, as it enables me to estimate the quality of a claim and the cost benefit analysis of bringing recovery actions against potential targets.

## CASE DEVELOPMENT AND POTENTIAL WORK PLAN STRATEGY

From experience, I know the goals and work plan involved in serving as a receiver. I am always mindful that a receiver's work is intended to benefit real victims and creditors, who virtually always have been defrauded. I am also highly cognizant that receivers, especially these days, are under close public and court scrutiny. I not only think that is good policy; I think it is entirely appropriate and that receivers must be held to a high standard of accountability.

≝ BERGER SINGERMAN

Amie Riggle Berlin, Esq.
Securities and Exchange Commission
Page 4
September 9, 2015

Obviously, all receiver and legal work must be excellent, but it is equally critical that the work be performed efficiently. I apply a cost benefit analysis in evaluating each course of action taken in a case, particularly as to litigation and maximizing recoveries. This is where my complex litigation trial experience and post-judgment work is particularly helpful. In both RRA and my FTC receivership, I routinely resolved cases through demand letters and negotiation. To sum up, I am compulsively focused on results and efficiency, and from a time and cost perspective, I submit my past results, experience and fair fee requests, support my contention.

Should the SEC honor me by recommending my retention to the Court for a receiver position, my team and I are ready to jump into action immediately. My present staffing projection is that I would have a partner, Etan Mark, Esq. serve as my general counsel. I would also staff Nicole Levy, a 3rd year associate on the case to handle as much work as feasible, and Luis Torres, a paralegal, who has worked with me on almost all of my major fraud cases the past 15 years. My standard hourly rate is $695 per hour, however, I will discount my fee to $600 per hour for this engagement. Mr. Mark will be charged at $470 per hour, Ms. Levy at $265 per hour and Mr. Torres as $225 per hour.

If I can answer any questions or provide you with further information, please let me know. I look forward to hearing from you soon.

Very truly yours,

BERGER SINGERMAN LLP

Charles H. Lichtman

5603419-2

**≡ BERGER SINGERMAN**



# BERGER SINGERMAN
### FLORIDA'S BUSINESS LAW FIRM

# CHARLES H. LICHTMAN

Chuck Lichtman's national practice focuses on complex commercial litigation and trial practice, particularly in "bet the farm" and emergency matters where his experience, insight, diligence and ability to form and lead a team have been demonstrated throughout his career, including through trial. He has significant experience in representing victims of fraud, and in receivership and trustee matters, corporate shareholder disputes and finance and securities litigation. His value is bolstered by his demonstrated ability to step into business crisis situations, manage and problem solve the many, constantly changing complexities of these types of cases.

**Representative Matters**
**Representations involving fraud:**

· Served as Lead Litigation Counsel for the court appointed Bankruptcy Trustee on all matters related to the fourth largest Ponzi scheme in United States history, In re: Rothstein Rosenfeldt & Adler, P.A. ("RRA"), involving $1.4 billion in fraudulent transactions. The matter involved winding down the operations of RRA, formerly a prominent 70-lawyer law firm in Fort Lauderdale, marshaling its assets, and investigating and bringing over 100 lawsuits for the benefit of victim investors and creditors. Ultimately, a Plan of Liquidation was approved by the Court that paid a 100% distribution to all creditors of the RRA estate, the highest such percentage payment in a Ponzi scheme in United States history, accomplished in less than 4 years from

## Partner

(954) 712-5138
clichtman@bergersingerman.com

350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301

**Practice Team**
· Dispute Resolution

**Practice Areas**
· Bankruptcy-Related Litigation
· Complex Commercial Litigation
· Complex Fraud & Securities Litigation
· Director/Officer Litigation & Partnership Disputes
· Real Estate Litigation

**Education**
· J.D., DePaul University College of Law
· A.B. Double Major, *with honors*, Indiana University

**Admissions**
· Florida, 1985
· Illinois, 1980
· U.S. Court of Appeals, Eleventh Circuit
· U.S. Court of Appeals, Federal Circuit
· U.S. Court of Appeals, Seventh Circuit
· U.S. District Court, Northern District of Florida
· U.S. District Court, Northern District of

bergersingerman.com

when the case was filed. Chuck's duties included first-chairing and overseeing all litigation, investigations and forensic examinations including tracing of money through over 30 accounts, and serving as the liaison with The Florida Bar on RRA attorney disciplinary matters and the Department of Justice on issues related to its criminal investigations. Chuck also oversaw the massive electronic discovery process, extracting and organizing data involving millions of e-mails and documents, while formulating an efficient process to assure all parties obtained requested discovery, while simultaneously dealing with extensive attorney-client privilege issues.

- Appointment as Receiver by a federal judge on a matter brought by the Federal Trade Commission against approximately 40 companies and individuals involved in a nationwide scheme to defraud consumers out of payments that were supposedly going to be used to help them save their homes during mortgage foreclosure proceedings. The matter is ongoing and Chuck has already cost-effectively recovered millions of dollars that is recompensing the victims of this scheme.

- Representation of the largest creditor and then as court-approved, Special Litigation Counsel to a bankruptcy trustee of a national insurance company, American Way Service Corp., pursuing fraudulent conveyances against the company's principal. The judge called the case one of the largest bankruptcy frauds in South Florida history. In recovering 100% of his client's multi-million dollar loss, Chuck first uncovered, then put together and successfully tried the civil case reported in a 47 page opinion. The adversary proceeding presentation was then mirrored by the U.S. Attorney who successfully prosecuted the corporate principal, sending him to prison for seven years.

- Appointed by the presiding judge in the Business Court in the Circuit Court of Broward County Florida, as Receiver over a 2,500-member church where the pastor was accused of embezzlement. Lichtman terminated the pastor, located a temporary pastor, installed a new board of directors to find a new pastor, and reshaped the church's finances giving it stability and assuring its solvency. Upon the successful conclusion of the matter, the church held a Sunday service which was announced as "Chuck Lichtman" day.

- Equity holders defrauded out of their investment in an $80 million transaction stated by the Miami Herald as the largest land sale transaction in Dade County history, related to Miami Beach's three famed high-rise Seacoast Towers. Chuck brought a myriad of claims in Florida State and United States Bankruptcy Court against numerous co-conspirators and other parties including professionals. At the beginning of the case he utilized pre-judgment remedies freezing and seizing the assets of two of the fraud's leading perpetrators. He then helped trace assets around the globe, bringing recovery actions in Monaco, Italy, the Caribbean and South America.

- The largest group of investor creditors in the $500 million Premium Sales securities fraud/Ponzi scheme, working with

Illinois
- U.S. District Court, Southern District of Florida
- U.S. Supreme Court
- U.S. Tax Court

other firms and helping to collect about 80% of the loss.

- A group of Japanese investors in the Mutual Benefits matter, the largest viatical fraud case in Florida. Within six months of taking the case, Chuck recovered all of his client's $13 million investment, successfully arguing to the Court that his client's funds, then in the custody of an SEC Receiver, belonged to his clients.
- An equipment lease company against a vendor and about thirty lessees, all charged with fraud. Chuck prevailed at trial, with the federal judge writing a 21 page opinion, which now serves as the leading case in Florida upholding an equipment lease's "hell or high water clause." Ultimately, Chuck recovered 100% of his client's loss.
- Within months of each other, in two separate securities fraud lawsuits where he was representing a plaintiff defrauded by the officers of unrelated public companies, he recovered nearly all remaining officer and director insurance policy proceeds. Before that, numerous other plaintiffs had sued these public companies and all of them had lost their cases either through the motion process or at trial.
- Represented investors bilked out of millions by a former engineer of the Canadian Space Authority and a storefront, fictitious bank located in Grenada. Chuck instituted legal proceedings against parties from all over the world, and won an appeal in the case establishing that the foreign defendants were subject to the Florida court's personal jurisdiction. He also traced assets and money through the Caribbean, Canada and Turkey. The case was featured on Canada's equivalent of 60 Minutes. The principal perpetrator of the fraud was convicted in U.S. federal criminal proceedings, and sentenced to 20 years.
- Represented a significant private art collector in one of the largest art fraud cases in American history, involving a dealer who was once labelled as having the best art gallery in the world by the Robb Report. Chuck recovered all of the client's loss through negotiations with an insurer in less than 90 days. He then initiated a bankruptcy of the art gallery and then turned over his file to prosecutors and helped jump start criminal proceedings that ultimately led to the culprit's conviction and a sentence of 6 to 18 years.
- The Bank of New England, who lost $6.2 million (in 1985) resulting from a fraudulent accounts receivables scheme. Prior to trial, the Bank's directors authorized a $20 million settlement payment to the defendants on their "failure to fund" and usury lender liability counterclaim. Chuck prevailed upon the Bank's Chairman to let him try the case instead of making the settlement payment. Following a three week federal bench trial, the judge entered a 53 page opinion finding for the bank on all grounds. A significant amount of the bank's loss was collected through aggressive fraudulent conveyance based post-judgment proceedings.
- The secured lender in bankruptcy court against a chain of movie

theatres, which were used as conduits to launder money by its principals, leaders of the largest Mexican heroin cartel. During the case, Chuck was told by one of these men in a courtroom hallway he "was going to end up in the trunk of a car if he didn't back off." Shortly afterwards, the drug cartel members disappeared, presumably leaving the country. Ultimately, after two years of work, the client was made nearly whole on its potential significant exposure. Chuck's investigation during the case uncovered and documented a payoff scheme with City of Chicago officials related to the purchase of certain real property.

- An individual named by Interpol on its "International Top Ten List of Con Men" who was also involved in the Abscam scheme which was in part depicted in the movie *American Hustle*. Chuck successfully defended him at a lengthy trial in Geneva, Switzerland on criminal charges of bank fraud.

**Representations involving lender liability and finance:**

- Successfully representing through trial a mid-sized Florida bank in prosecuting what the Miami-Dade County Business Court judge said was the most complex commercial mortgage foreclosure case she had ever seen in her career. This matter also involved successfully defending an equally complex $100 million counterclaim involving claims of fraud, breach of fiduciary duty and violations of the Federal Bank Holding Act.
- Successfully defending a Florida bank by prevailing on a summary judgment on alleged $25 million claims brought by a multi-national company. The plaintiff alleged the bank violated "Know Your Customer" rules and was aiding and abetting fraud and fraudulent transfers, perpetrated by the company's officer who embezzled corporate funds.
- In representing various financial institutions, Chuck has successfully defended numerous lender liability cases, including four alone where damages sought exceeded $90,000,000, winning two at trial, one by summary judgment and one by motion to dismiss.
- Significant experience in equipment leasing and secured financing, banking, workouts and creditor's rights including bankruptcy.

**Other representations involving complex civil business matters:**

- Represented the controlling interests of a family enterprise involved in the worldwide production and distribution of asphalt, in a dispute with their son/brother involving a $140 million claim of fraud and breach of fiduciary duty that was wrapped into 12 lawsuits and two bankruptcies pending around the United States. The parties were simultaneously locked in a battle over control of an asphalt refinery in Texas that ended up in a Chapter 11 bankruptcy. Ultimately, Mr. Lichtman orchestrated a global settlement that resolved all litigation and the sale of the refinery for $100 million that also paid all of the creditors of the refinery in full.

- Representing a significant shareholder and investor in an internationally known cruise line in a hostile dispute with management, ultimately forcing the company to buy him out at a premium.
- Serving on a team that successfully defended three of the nations' most-well known retailers in a patent infringement action where, if lost, damages were estimated at between $1 billion to $10 billion.
- Successfully twice defending a $100 million tort claim in Federal Court by Abbott Labs against a client, alleging the illegal pirating of the cancer drug, Lupron.
- Representing Florida's U.S. Senator Bill Nelson in a Freedom of Information Act claim against FEMA, arising out of insurance issues and fraud arising out of Hurricane Katrina.
- Settling an attorney malpractice action brought against prominent patent lawyers for full policy limits related to their negligent advice in issuing a Validity Opinion which caused the client to be sued in a myriad of patent related actions, nearly putting it out of business.
- Obtaining injunctions in three states preventing trademark infringement of a nationally known mattress brand, collecting significant damages and putting the infringer out of business.
- Retained as an expert witness on the issue of reasonable attorneys' fees opposing a claim by an attorney and his client for an approximate $1 billion fee and sanction, resulting from violation of a trial order, in what is believed to be the largest such request in Florida's history.
- Representing a majority shareholder of a national pet vaccination business in litigation against the estate of his equal shareholder, ultimately gaining control of the company through a highly advantageous tax driven structured settlement, which saved the client a significant sum of money compared to the buy-out formula contemplated by the parties Stockholder's Agreement.
- Guiding a national insecticide company through a myriad of hostile disputes with its equal shareholder, while keeping the matter out of court, ultimately resulting in the client acquiring the other 50% interest on highly favorable terms.
- Successfully representing the son and his father's estate in a hotly contested and complex bidding process to purchase two locally well-known banquet halls, following the father's murder by his business partner.
- Successfully representing a national pharmaceutical manufacturer on claims of breach of contract in a supply distribution agreement, ultimately resulting in a favorable settlement.
- Selection by the securities firm, Drexel Burnham Lambert, to serve as its counsel on Florida securities litigation.
- Successfully defending a local bank through trial in an eviction for non-monetary defaults, in a case two trial judges said was the most complex eviction case either had ever seen, and which

had been described by lawyers familiar with the case, as impossible to win.

**Awards and Honors**

- *Chambers & Partners, America's Leading Business Lawyers*, Commercial Litigation, 2014- 2015
- *The Best Lawyers in America®*, Bet-the-Company Litigation, Securities Litigation, Commercial Litigation and Bankruptcy Litigation, 2009-2016
  - *Best Lawyers'* 2016 Litigation-Bankruptcy Lawyer of the Year, Fort Lauderdale
- *Daily Business Review*, Finalist, Most Effective Lawyer Award, Bankruptcy, 2011
- *South Florida Business Journal*, Key Partner, 2010
- *Florida Trend*, Legal Elite, 2004-Present
- *Florida Super Lawyers*, 2007-2015
  - Top 100 Miami, 2015
- *South Florida Legal Guide*, Top Lawyers, 2012-Present
- *Martindale-Hubbell*, AV® Preeminent™ rated

**Community Activities/ Associations**
**Civic Involvement**

Chuck has devoted a significant amount of personal time to a state and national pro bono effort on matters related to election law and voter protection issues. He served as co-lead counsel for the Democratic Party in the 2000 Presidential election recount and litigation matters, pending in Broward County, Florida. He then served as Special Lead Counsel for the John Kerry Campaign in Florida in the 2004 Presidential Election. In this effort, he formulated and recruited a voter protection team of 3200 Florida lawyers, which served as the voter protection template used by the Democratic National Committee in the other battleground states. Following that election, he founded the National Democratic Lawyer's Counsel, establishing chapters across the country committed to protecting every citizen's right to vote. This organization was ultimately merged into the DNC. In the 2008 Presidential election, he served as Statewide Lead Counsel for the Florida Democratic Party and the Obama campaign, overseeing the technical aspects of the election in all of Florida's 67 counties and a voter protection program which placed over 5800 lawyers in the polls throughout Florida on election day.

**Professional/Legal Involvement**

- Served as Chairman of the American Bar Association Lease Financings and Secured Transactions Subcommittee.
- Equipment Lease and Finance Association of America:
  - Chairman of its Legislative and Regulatory Subcommittee;
  - On the ELFA's Governmental Affairs Council, where for three years he helped plan Capitol Hill Day, a nationwide grass roots lobbying effort by finance industry leaders in Washington; and

- On both its Legal Committee and Service Provider's Committee.
- Former President of the Florida Association of Equipment Lessors where he spearheaded the equipment lease industry's efforts to favorably cause the Florida Department of Revenue to modify their assessment of documentary tax stamps on lease transactions.
- Chuck served by appointment from Senator Bill Nelson as a member of Florida's Federal Judicial Nominations Commission, which interviews nominees and makes recommendations to the President for the positions of U.S. District Judge, U.S. Attorney and U.S. Marshall.

**Recent Speaking Engagements**

- November 2014 - 9th Annual National Institute on Securities Fraud - American Bar Association, "Experts on Offense, Experts on Defense"
- November 2014 - AICPA Annual Forensic Conference and National Securities Fraud Institute, "Accounting Experts in Securities Fraud Cases"
- September 2014 - C-5 International Fraud Conference, "Application for Foreign Evidence Using 28 U.S.C. §1782"
- May 2014 - The Florida Bar CLE, "Commencement of a Receivership and How to Make your Judge Happy"
- January 2014 - Florida Institute of Certified Public Accountants, "The Use of Forensic Accountants in the Scott Rothstein Ponzi Scheme"
- November 2013 - C-5 International Fraud, Asset Tracing & Recovery Conference, "The Role of the State in Asset Recovery and Forfeiture Actions,"
- October 2013 - The American Bar Association's Eighth Annual National Institute on Securities Fraud, "Derivative Claims and Class Actions"
- October 2012 - C-5 International Fraud, Asset Tracing & Recovery Conference, &quotUnraveling the $1.2 Billion Rothstein Ponzi Scheme&quot
- March 2012 - Joint Association of Certified Fraud Examiner and Institute of Internal Auditors' 2012 Fraud Conference, "Best Practices in Working with Forensic Accountants, Fraud Investigators and IT Specialists"
- November 2011 - The American Bar Association's National Securities Fraud Institute, "Blue Sky Laws – Critical Litigation Issues"
- March 2011 - Joint Association of Certified Fraud Examiner and Institute of Internal Auditors 2011 Fraud Conference, "Corporate Investigations and E-Discovery"
- March 2011 - Joint Association of Certified Fraud Examiner and Institute of Internal Auditors 2011 Fraud Conference, "Corporate Investigations"
- October 2010 - The Fifth Annual National Institute on Securities Fraud, "Show Me the Money: Indemnification of Attorneys' Fees

and D&O Coverage Issues"

**Recent In the News**

- August 17, 2015 - Twenty-Five Berger Singerman Attorneys Recognized in the 2016 Edition of Best Lawyers In America
- August 17, 2015 - Twenty-Five Berger Singerman Attorneys Recognized in the 2016 Edition of Best Lawyers In America
- June 29, 2015 - Forty Berger Singerman Attorneys Recognized in the 2015 Edition of Florida Super Lawyers
- June 9, 2015 - Daily Business Review quotes Chuck Lichtman and Gavin Gaukroger on "Miami Firm Ordered to Pay $2.3 Million in Mortgage Relief Scam"
- May 20, 2015 - Berger Singerman Recognized with High Marks for Twelfth Consecutive Year by Chambers USA
- May 2, 2015 - PalmBeachPost.com mentions Chuck Lichtman on "Web of 14 lawsuits settled stemming from Sargeant family fight"
- January 24, 2015 - Miami Herald quotes Chuck Lichtman on "Standing while working boosts your posture and health"
- July 4, 2014 - South Florida Business Journal mentions Chuck Lichtman on "Money: Receiver's report uncovers trouble in Fashion Mall redevelopment"
- July 11, 2013 - South Florida Business Journal quotes Chuck Lichtman on "How the RRA liquidation settlement was worked out"
- May 17, 2013 - South Florida Business Journal mentions Chuck Lichtman on "Receiver in $21M Prime Legal Plans fraud sues attorneys"



Michael I. Goldberg

Akerman LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2999
Tel: 954.463.2700
Fax: 954.463.2224

Dir: 954.468.2444
michael.goldberg@akerman.com

September 14, 2015

**VIA E-MAIL**

Amie Riggle Berlin, Esq.
Securities and Exchange Commission
801 Brickell Avenue
Suite 800
Miami, Florida 33131

> Re:  **Potential Receivership of U.S. EB-5 Investments, LLC; Lin Zhong a/k/a Lily Zhong and related entities**

Dear Ms. Riggle Berlin:

Thank you for inviting me to submit an application to be considered as the potential receiver in the case the United States Securities and Exchange Commission ("SEC") intends to file against U.S. EB-5 Investments, LLC; EB5 Asset Manager, LLC; Lin Zhong a/k/a Lily Zhong; Oakland Office Holdings LLC; B.X. Wok Construction LLC; US Investment LLC d/b/a US Investment FL LLC; Top Sun Energy LLC; Ocean BLVD. Family Partnership, Ltd.; B.X. Property Management, LLC; US1 Real Estate Developments, LLC and potential other related parties (collectively, the "Defendants"). This letter sets forth the facts which I consider pertinent to your consideration of my application. Of course, if you need any additional information, please let me know and I will provide it to you immediately.

> **A.    Conflicts of Interest**

As you are aware, I am a partner at Akerman LLP ("Akerman") and I have completed a conflict check in Akerman's conflict checking system for each of the Defendants listed on the attached **Exhibit "A."**   Neither I nor Akerman has in the past or currently represent any of the

akerman.com

{36173920;1}



EXHIBIT
C

Amie Riggle Berlin, Esq.
September 14, 2015
Page 2

---

Defendants.  Accordingly, there are no conflicts which prevent me from serving as receiver or Akerman from serving as my counsel.

### B.  Experience in Receiverships in General and Specific Qualifications for This Potential Receivership

As you are aware, I have significant experience handling federal equity receiverships.  I have in the past or I am presently handling approximately twenty federal equity receiverships on behalf of many of the Judges in the United States District Court for the Southern and Middle Districts of Florida.  Attached hereto as **Exhibit "B"** is a copy of my biography which sets forth these receiverships in further detail.  Over the years, my group has become extremely efficient in administering receiverships and there is no "learning curve" whatsoever with respect to the legal issues involved or the administration function.  Moreover, we routinely set up websites and toll free numbers to communicate with the victims which is important in these types of cases as it promotes efficient communication for the lowest possible cost.

I also believe that I am uniquely suited to serve as receiver in this case for several other reasons.  More specifically, you have informed me that the victims of the alleged fraud largely reside in China and that the principal of the Defendants, Lin Zhong, is a citizen of New Zealand.  First, Akerman has several attorneys that speak both Mandarin and Cantonese.  This should enable us to speak directly to the victims thereby promoting effective communication and trust— two important attributes in administering a receivership.  Second, in connection with another receivership that I am handling, I have significant experience dealing with the New Zealand legal system as I have been involved in litigation matters in the New Zealand trial court, appellate court and High Court.  I have been to New Zealand six times in the past ten years and have relationships with local lawyers and accountants in New Zealand.  Accordingly, to the extent there are assets of the receivership in New Zealand, I believe I will be able to quickly and efficiently  assert the appropriate claims to them.

Finally, it is my understanding that a great deal of the money raised from investors in this case is based on EB-5 investments directly traceable to real estate located in Florida.  Akerman has attorneys who specialize in EB-5 investments.  Moreover, throughout the years I have seized and sold approximately $200 million in real estate.  To that end, I have paralegals and lawyers who are familiar with the legal process of identifying, securing and selling real estate within the receivership process from the recording of the Complaint and Order Appointing Receiver in the district where the real property is located in order to obtain jurisdiction over such property through the requirements of 28 U.S.C. § 2001 and § 2002 governing the sale of such real property.  Simply put, we have no learning curve and we  believe we can handle this receivership for the lowest possible cost.

Amie Riggle Berlin, Esq.
September 14, 2015
Page 3

---

### C.  Proposed Staffing and Hourly Rates

If selected by the Court to serve as receiver,  I propose to bill the estate at $375 per hour – a substantial discount from the $695.00 per hour rate I charge my private clients. This is the same rate that I handled similar cases for over ten years ago and it should save the estate thousands of dollars.  All other Akerman professionals (attorneys and paralegals) will be billed at a 15% discount off their standard rates.  Moreover, to the extent it is necessary for me to hire any other professionals such as accountants, I will require them to provide similar discounts.  Of course, I recognize that any fee arrangement is subject to the Court's approval and agree to look solely to the estate's assets for payment.

If selected, I plan to be primarily represented by David Spector, my partner in my West Palm Beach office.  Similar to me, David's practice is focused on cases involving fraud and the two of us co-chair Akerman's newly created Fraud and Recovery Practice Group.  Once again, thank you for thinking of me and let me know if you need any additional information or need me to complete a background questionnaire.

Respectfully Submitted,

Michael I. Goldberg

MIG/clc
Enclosures

**EXHIBIT A**

U.S. EB-5 Investments LLC
EB5 Asset Manager, LLC
Lin Zhong a/k/a Lily Zhong
Oakland Office Holdings LLC
B.X Wok Construction LLC
US Investment LLC d/b/a US Investment FL LLC Top Sun Energy LLC Ocean BLVD. Family Limited
Partnership, Ltd.
B.X Property Management LLC
US1 Real Estate Developments, LLC

**EXHIBIT B**



# Michael I. Goldberg



**Partner**
**Chair, Bankruptcy & Reorganization Practice Group**

350 East Las Olas Boulevard
Suite 1600
Fort Lauderdale, FL 33301
Tel:    954.468.2444
Fax:    954.463.2224
michael.goldberg@akerman.com

## Practice

Bankruptcy & Reorganization

## Education

J.D., Boston University School of Law, 1990; *magna cum laude*

M.B.A., New York University, 1987

B.A., Boston University, 1985; History

## Bar Admissions

Florida

New York

Michael Goldberg is the Akerman Bankruptcy & Reorganization Practice Group Chair. He has been qualified as an expert witness on Ponzi schemes in several district court cases. He has testified as an expert witness on Ponzi schemes in several cases in the District Court for the Southern District of Florida. Michael has appeared on national news programs such as CNN, CNBC, Fox News, National Public Radio (NPR), and numerous local NBC, ABC, CBS, and Fox affiliates on Ponzi schemes and receiverships. He has also been quoted on Ponzi schemes and receiverships in national publications such as *Bloomberg's, Forbes, People Magazine, The Wall Street Journal, The New York Times, The Miami Herald*, the *Sun Sentinel,* and numerous other publications.

## Representative Experience

**Bankruptcy Work and Representative Clients**

- Liquidating Trustee of Rothstein Rosenfeldt Adler Liquidating Trust responsible for overseeing all distributions to creditors and handling litigation on behalf of the Liquidating Trust resulting in a one hundred percent payout to all general unsecured creditors.

- Represented the Official Committee of Unsecured Creditors in the Rothstein Rosenfeldt Adler bankruptcy case involving the liquidation of a law firm engaged in a $1.2 billion Ponzi scheme.

- Represented Blackfin Yacht Corporation, a large manufacturer of sport fishing boats, in its Chapter 11 filing culminating in a sale of substantially all of its assets.

- Represented Samsung Electronics of America in bankruptcy cases throughout the United States including the Circuit City, Tweeter and Ultimate Electronics cases.

- Represented AutoNation, the largest automobile dealership in the United States, in the ANC Rental bankruptcy in Delaware in connection with large avoidable transfer claims made against AutoNation arising out of its spin-off of Alamo and National Car Rental.

- Represented HIG Capital in connection with its purchase of Supra Telecom pursuant to a buyer sponsored plan of reorganization.

- Represented Parkstone Medical in its Chapter 11 case which culminated in the sale of substantially all of its assets pursuant to Section 363 of the Bankruptcy Code.

- Represented the Chapter 11 Trustee of the Louis J. Pearlman and Transcontinental Records estates. Pearlman, who was the creator and the manager of such musical groups as the Back Street Boys and 'NSYNC, was convicted of running a $500 million Ponzi scheme victimizing hundreds of investors.

- Represented Republic Services, Inc., a large waste company, in the purchase of a waste transfer station pursuant to Section 363 of the Bankruptcy Code.

- Represented the Trustee of Omni Capital, Ltd., a company engaged in a $50 million Ponzi scheme. Responsible for litigating dozens of "claw-back" suits to recover fraudulent transfers of profit to investors.

- Co-counsel to Commerzbank of Germany in defending the bank in a multi-million dollar fraudulent transfer claim brought by the Trustee in connection with the Sentinel Funds case. The case involved novel issues of international jurisdiction and banking law.

- Co-counsel to a lending syndicate consisting of 28 banks and hedge funds in defending a $675 million fraudulent transfer claim brought by the creditors' committee in the TOUSA bankruptcy case.

- Counsel to the Quail West and Tesoro Homeowners Associations in the Ginn bankruptcies. Responsible for protecting the interests of the homeowners in connection with 363 sales of the uncompleted real estate projects to new developers.

- Co-counsel to a steering group of term lenders in the Fontainebleau Las Vegas case.

- Represented South Motors Corporation and its affiliates, consisting of 17 car dealerships in their Chapter 11 bankruptcies. Approximately seven of the dealerships were sold pursuant to a 363 sale and the remaining dealerships were reorganized pursuant to a plan of reorganization.

**Receivership Work**

- Receiver, Federal Employee Benefits Group, Inc. and F&S Asset Management, Inc. - Appointed receiver by Chief Judge of the United States District Court for the Southern District of Florida at the request of the Securities and Exchange Commission over entities engaged in a $50 million Ponzi scheme which victimized approximately 300 FBI, DEA, and ICE agents in connection with non-existent bond fund.

- Receiver, Worldwide Entertainment, Inc.; The Entertainment Group Fund, Inc.; and American Enterprises, Inc. - Appointed Receiver by the United States District Court for the Southern District of Florida over a group of entertainment companies, including the world's second largest independent concert promoter, to operate and liquidate diverse entertainment assets, including venues, shows, movies and other intellectual property, in order to repay approximately 3,750 investors owed more than $300 million.

- Receiver, University Lab Technologies, Inc. - Appointed Receiver by the United States District Court for the Southern District of Florida over a company engaged in the manufacturing and distribution of natural herbal remedy products which raised money from dozens of investors in violation of federal securities laws.

- Receiver, Berman Mortgage Corporation - Appointed Receiver by the Circuit Court in Miami, Florida over a large mortgage origination business with approximately 650 investors and total mortgages and/or real estate developments valued at more than $200 million.

- Receiver, MAMC Incorporated - Appointed Receiver by the Circuit Court in Miami, Florida over a business engaged in the servicing of more than $200 million in mortgages on behalf of approximately 650 lenders.

- Receiver, Service Five Investments, Inc. - Appointed Receiver by the Circuit Court in Miami, Florida over a company engaged in making loans to active military personnel. At the time of appointment, the company had debts of $36 million. A plan of distribution was approved by the Eleventh Judicial Circuit Court in Miami, Florida which will result in creditors receiving an approximate 85% distribution.

- Receiver, Ware Enterprises and Investments, Inc. - Appointed Receiver by the United States District Court for the Middle District of Florida over an investment firm engaged in a $30 million dollar Ponzi scheme.

- Receiver, Par Three Investments, Inc. - Appointed Receiver by the United States District Court for the Southern District of Florida over a company engaged in a $10 million Ponzi scheme.

- Receiver, AB Financing & Investments, Inc. - Appointed Receiver by the United States District Court for the Southern District of Florida over a company engaged in a $80 million Ponzi scheme. Responsible for liquidating six large commercial properties including hotels and office buildings.

- Receiver, The Cyprus Fund and related companies - Appointed Receiver by the United States District Court for the Southern District of Florida over a group of companies operating a $100 million Ponzi scheme. Responsible for operating corn and soybean farms and liquidating vast real estate holdings throughout Ohio and Florida.

- Receiver, Home Equity Mortgage Corporation - Appointed Receiver by the Circuit Court in Miami, Florida over a company engaged in the business of originating and servicing over $200 million in mortgages on behalf of approximately 800 investors.

- Receiver, Discovery Capital Group, LTD. - Appointed Receiver by the United States District Court for the Southern District of Florida over a securities brokerage firm accused of defrauding millions of dollars from hundreds of investors throughout the United States and Europe.

- Receiver, Wealth Pools International, Inc. and Recruit for

Wealth, Inc. - Appointed as substitute receiver by the United States District Court for the Middle District of Florida in a $136 million Ponzi scheme case involving 15,000 victims.

- Receiver, Sterling Wentworth Currency Group, Inc. and LaSalle International Clearing Corporation - Appointed receiver at the request of the CFTC by the United States District Court for the Southern District of Florida in a $36 million Ponzi scheme involving FOREX trading.

- Counsel to the Receiver of Biscayne Landing, LLC., a 200 acre multi use real estate development.

- Represented the Receiver in Premium Sales, a $250 million Ponzi scheme.

- Represented the Receiver of Omni Capital Ltd., a $50 million Ponzi scheme.

## Awards & Recognition

- *Daily Business Review*, "Lawyer of the Year," Finalist, 2015

- *The Best Lawyers in America* 2015-2016, Named as "Lawyer of the Year" for Litigation-Bankruptcy and Bankruptcy and Creditor Debtor Rights/Insolvency and Reorganization Law in Fort Lauderdale

- *The Best Lawyers in America* 2006-2016, Listed in Florida for Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law and Litigation - Bankruptcy

- *South Florida Legal Guide* Top Lawyers 2004-2015, Listed for Bankruptcy, Creditors Rights

- *Chambers USA* 2006-2015, Ranked in Florida for Bankruptcy/Restructuring

- *Florida Trend's* Legal Elite 2005-2011, 2013-2015, Listed for Bankruptcy & Workout

- *Super Lawyers* Magazine 2007-2015, Listed in Florida for Bankruptcy & Creditor/Debtor Rights

- *Daily Business Review*, Most Effective Lawyer in Bankruptcy, Winner, 2013

- *The Best Lawyers in America* 2013, Named as "Lawyer of the Year" for Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law in Miami

- *Super Lawyers* Magazine 2010, Listed in Florida as a "Top 100 Lawyer"

- *BTI* 2007, Listed as a Client Service "All-Star"

- National Multiple Sclerosis Society, Leadership Award, 2000

- Paul J. Liacos Scholar; G. Joseph Tauro Scholar

- Martindale-Hubbell, AV Rated

## Published Work & Lectures

- Palm Beach Bar Association, Speaker, "Ponzi Scheme Liquidations," May 2015

- The Florida Bar Continuing Legal Education Committee and the Business Law Section, Moderator on Statutory Receiverships, May 2014

- Central Florida Bankruptcy Law Association, Speaker, "Liquidating Ponzi Schemes," October 2012

- C5I Fraud, Asset Tracing and Recovery Conference, Speaker, "Miami Vice - Unravelling the $1.2 Billion "Rothstein" Ponzi Scheme," October 2012

- Turnaround Management Association, Speaker, "Liquidating Ponzi Schemes," October 2010

- North American Securities Administrator Association's (NASAA) 25th Annual Public Policy Conference, Speaker, "Overview of Receivership and Ponzi Schemes," Audience Included State and Federal Regulators from the United States and Canada, April 2010

- Greater Miami Jewish Federation, Professional Advisory Committee, Lunch and Learn Program, Speaker, January 2010

- Turnaround Management Association, Speaker, "Mopping Up After Madoff," 2009

- Broward County Family Law Bar, Speaker, "Bankruptcy Law Issues for the Family Law Practitioner," December 2005

- Stetson University College of Law and the Florida Bar, Faculty Speaker, "The Ins and Outs of the New Reformed Code-Minefields for the Unwary Special Topics Under Bankruptcy Reform," August 2005

- Stetson University College of Law Seminar, Faculty Speaker,

"Previewing the Bankruptcy Reform Act," August 2005

- Turn Around Management Association, Annual South Florida Dinner, Speaker, "Trustees and Receiver's Responsibility for Preserving Computer Evidence in Bankruptcy and Receiverships," 2005

- *Daily Business Review*, Author, "Florida to Remain a Haven for Debtors," March 30, 2005

- *Florida Medical Business*, Author, "Road Map For Dealing With Your PPM When It Careens Towards Bankruptcy"

- *South Florida Business Journal*, Author, "Buying Assets from Bankrupt Businesses," May 2002

- *Daily Business Review*, Author, "When Bankruptcy Looms: Deciding If Patient Can Be Saved Or Read Last Rites," March 23, 1998

- The Florida Bridge The Gap Seminar, Speaker, 1995 and 1996

- As a law clerk, assisted in writing a book on exemptions for PLI and his portion of Colliers, dealing with Leverage Buyouts and Fraudulent Transfers; also wrote a thesis receiving the highest honors on this particular issue, in an article entitled "Fraudulent Transfer Laws, Are They In Need Of Repair'"

## Court Admissions

- U.S. Bankruptcy Court, Southern District of Florida
- U.S. District Court, District of Colorado
- U.S. District Court, Middle District of Florida
- U.S. District Court, Southern District of Florida
- U.S. District Court, Southern District of California

## Professional Memberships & Activities

- The Florida Bar, Member
- Broward County Bar Association, Member
- New York State Bar Association, Member
- Bankruptcy Bar Association of the Southern District of Florida, Member
- American Bar Association, Member

- Families Against Cult Teachings, Legal Advisor
- Nova University School of Law, Board of Trustees, 2012-2014
- FBI Citizens Academy Graduate, 2008

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 15-cv-62323-JAL

**SECURITIES AND EXCHANGE COMMISSION,**

<strong>Plaintiff,</strong>

v.

**EB5 ASSET MANAGER, LLC, and**
**LIN ZHONG A/K/A LILY ZHONG**

<strong>Defendants, and</strong>

**U.S. EB-5 INVESTMENTS LLC,**
**OAKLAND OFFICE HOLDINGS LLC,**
**B.X WOK CONSTRUCTION LLC,**
**US INVESTMENT LLC D/B/A US INVESTMENT FL LLC,**
**TOP SUN ENERGY LLC,**
**OCEAN BLVD. FAMILY LIMITED PARTNERSHIP, LTD.,**
**B.X PROPERTY MANAGEMENT LLC,**
**US1 REAL ESTATE DEVELOPMENTS, LLC,  and**
**INVESTOR ASSET PROTECTION, LLC**

<strong>Relief Defendants.</strong>

_____/

### ORDER

**WHEREAS**, Plaintiff Securities and Exchange Commission has filed an emergency motion

for the appointment of a Receiver over Defendants EB5 Asset Manager, LLC (collectively, the

"Defendants"), and U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok

Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC,

Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate

Developments, LLC and Investor Asset Protection, LLC  (collectively, the "Relief Defendants"),

with full and exclusive power, duty and authority to: administer and manage the business affairs,

funds, assets, choses in action and any other property of the Defendants and Relief Defendants;

operate as the sole and exclusive managing member or partner of the Defendants and Relief Defendants; maintain sole authority to administer any and all bankruptcy cases in the manner determined to be in the best interests of the estates of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC; marshal and safeguard all of the assets of the Defendants and Relief Defendants and take whatever actions are necessary for the protection of investors;

WHEREAS, the Court has found Plaintiff Securities and Exchange Commission has made a sufficient and proper showing of the relief requested by evidence demonstrating a *prima facie* case of violations of the federal securities laws by EB5 Asset Manager, LLC, and the receipt of illegally obtained funds or assets by Relief Defendants U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC;

WHEREAS, the Commission has submitted the credentials of a candidate to be appointed as Receiver of all of the assets, properties, books and records, and other items of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, and US1 Real Estate Developments, LLC, including any properties, assets and other items held in the name of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate

Developments, LLC and Investor Asset Protection, LLC and the Commission has advised the Court that this candidate is prepared to assume this responsibility if so ordered by the Court

**NOW, THEREFORE, IT IS ORDERED AND ADJUDGED** that Angel A. Cortiñas is hereby appointed the Receiver over EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC and each of their subsidiaries, successors and assigns, and is hereby authorized, empowered, and directed to:

1.     Take immediate possession of all property, assets and estates of every kind of the Defendants and Relief Defendants whatsoever and wheresoever located, including but not limited to all offices maintained by the Defendants and Relief Defendants' rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the Defendants and Relief Defendants, wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court;

2.     Investigate the manner in which the affairs of the Defendants and Relief Defendants were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Defendants and Relief Defendants and their investors and other creditors as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred money or other proceeds directly or indirectly traceable from investors in EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC,

Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC, their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

     3.     Present to this Court a report reflecting the existence and value of the assets of the Defendants and Relief Defendants and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Defendants and Relief Defendants;

     4.     Appoint one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the assets and business of the Defendants and Relief Defendants and exercising the power granted by this Order, subject to approval by this Court;

5.    Engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities, including, but not limited to, the United States Marshal's Service, accountants, or a private security firm;

6.    Defend, compromise or settle legal actions, including the instant proceeding, in which EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC, or the Receiver are a party, commenced either prior to or subsequent to this Order, with authorization of this Court; except, however, in actions where EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC is a nominal party, as in certain foreclosure actions where the action does not effect a claim against or adversely affect the assets of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC, the Receiver may file appropriate pleadings at the Receiver's discretion. The Receiver may waive any attorney-client or other privilege held by EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC;

7.     Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC and, upon, order of this Court, of any of their subsidiaries or affiliates, provided that the Receiver deems it necessary;

8.     Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary, and advisable in discharging the Receiver's duties;

9.     Have access to and review all mail of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC (except for mail that appears on its face to be purely personal or attorney-client privileged) received at any office or address of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC.

IT IS FURTHER ORDERED AND ADJUDGED that, in connection with the appointment of the Receiver provided for above:

10.     EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC, and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of the Defendants and Relief Defendants shall deliver forthwith upon demand such property, money, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of the Defendants and Relief Defendants;

11.     All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of, EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC or the Defendants shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver;

12.     Unless authorized by the Receiver, EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and

Investor Asset Protection, LLC, and their principals shall take no action, nor purport to take any action, in the name of or on behalf of the Defendants and Relief Defendants;

13.     EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC, their principals, and their respective officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Receiver, including, if deemed necessary by the Receiver, appearing for deposition testimony upon two days' notice (by facsimile), and producing documents upon two days' notice, while the Commission's request for an asset freeze is pending.  EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC and their principals and respective officers, agents, employees, attorneys, and attorneys-in-fact shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of the Receiver's duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choses in action described above;

14.     The Receiver, and any counsel whom the Receiver may select, are entitled to reasonable compensation from the assets now held by or in the possession or control of or which may be received by EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC; said amount or

amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval of the Court;

15.     During the period of this receivership, all persons, including creditors, banks, investors, or others, with actual notice of this Order, are enjoined from filing a petition for relief under the United States Bankruptcy Code without prior permission from this Court, or from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC;

16.     The Receiver is fully authorized to proceed with any filing the Receiver may deem appropriate under the Bankruptcy Code as to EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC;

17.     Title to all property, real or personal, all contracts, rights of action and all books and records of the Defendants and Relief Defendants and their principals, wherever located within or without this state, is vested by operation of law in the Receiver;

18.     Upon request by the Receiver, any company providing telephone services to EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate

Developments, LLC and Investor Asset Protection, LLC shall provide a reference of calls from any number presently assigned to the Defendants and Relief Defendants to any such number designated by the Receiver or perform any other changes necessary to the conduct of the receivership;

19.     Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver;

20.     The United States Postal Service is directed to provide any information requested by the Receiver regarding EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC and to handle future deliveries of the mail of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC as directed by the Receiver;

21.     No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help

whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

22.     No bond shall be required in connection with the appointment of the Receiver. Except for an act of gross negligence or greater, the Receiver shall not be liable for any loss or damage incurred by EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC, or by the Receiver's officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and responsibilities;

23.     Service of this Order shall be sufficient if made upon EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC and their principals by facsimile or overnight courier;

24.     In the event the Receiver discovers that funds of persons who have invested in EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC or have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds;

25.     This Court shall retain jurisdiction of this matter for all purposes.

26.     The Receiver shall file applications with this Court for fees and costs for himself and any counsel or other professionals he retains on a quarterly basis.  The applications shall include itemized and detailed bills for all fees sought, and receipts or other appropriate documentation for all expenses and costs sought.   Simultaneously with filing the fee applications, the Receiver shall file a quarterly report with the Court detailing actions taken and results achieved in the previous quarter.  At least 10 days before filing any fee application with the Court, the Receiver shall submit a draft of the application for review to the Securities and Exchange Commission.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Court has jurisdiction to determine the effect of any bankruptcy proceeding may have on this matter.

**IT IS FURTHER ORDERED AND ADJUDGED** that the automatic stay provisions of 11 U.S.C. § 362(a) do not apply to this matter and the equitable relief requested by the Commission.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Receiver is authorized, solely and exclusively, to operate and manage the businesses and financial affairs of Defendants EB5 Asset Manager, LLC, and Relief Defendants U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC and the Receiver Estates.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Receiver shall succeed to all rights and powers of managing member and/or managing partner of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US

Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC and Investor Asset Protection, LLC and shall have the sole and exclusive right and authority to take all actions necessary in such capacity, including, but not limited to, filing bankruptcy petitions on behalf of EB5 Asset Manager, LLC, U.S. EB-5 Investments LLC, Oakland Office Holdings LLC, B.X Wok Construction LLC, US Investment LLC d/b/a US Investment FL LLC, Top Sun Energy LLC, Ocean Blvd. Family Limited Partnership, Ltd., B.X Property Management LLC, US1 Real Estate Developments, LLC   and Investor Asset Protection, LLC and to act as debtor-in-possession, subject to further order of the Bankruptcy Court.

**DONE AND ORDERED** this ____ day of _____, 2015, at Miami, Florida.

_____
JOAN A. LENARD
UNITED STATES DISTRICT JUDGE

Copies to:
Alejandro O. Soto, Esq.
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
*Counsel for Securities and Exchange Commission*
Phone: (305) 982-6322
Fax: (305) 536-4154
SotoAl@sec.gov